## WELBOURN *v.* KEE.

### Opinion delivered May 27, 1918.

LIQUIDATED DAMAGES—EXCHANGE OF LANDS—STIPULATION OF THE PARTIES.—A. and B. agreed to exchange certain lands, each to assume encumbrances upon the lands to be taken; they executed bonds to each other in the sum of $500 for the performance of the contracts. *Held,* the trial court properly held that the execution of the bonds amounted to a stipulation for liquidated damages in the event of a breach.

Appeal from Benton Circuit Court; *Jos. S. Maples,* Judge; affirmed.

*J. V. Walker, E. P. Watson* and *W. S. Floyd,* for appellant.

1.    The court erred in its instructions to the jury. The bond for $500 was not for liquidated damages, but was a penalty.  Field on Damages, 153; 1 Sutherland on Damages, 480, 490; 7 Wheaton, 13; 122 Ark. 167; 73 *Id.* 432; 57 *Id.* 168.

2.    Welborn was in no event liable except for actual damages, that is the loss of his (plaintiff's) bargain which was easily proven.  85 Ark. 289; 111 *Id* 484; 91 *Id.* 433; 70 Am. Dec. 453; 89 *Id.* 574; 48 *Id.* 775.

3.    There was no breach of contract by appellant, but the breach was by appellee.  The court in its instructions changed the issues in the case and left it to

the jury to decide the case upon something not before them.

*McGill & McGill,* for appellees.

There is no error in the instructions. It is clear both parties contemplated liquidated damages and not a penalty. 122 Ark. 163-7; 83 *Id.* 144; 14 *Id.* 315; 104 *Id.* 16; Am. Cases, 1917 D. 736. The rulings of the court are correct.

WOOD, J. Appellant owned 365 acres of land in Mayes County, Oklahoma; appellee owned 80 acres of land in Benton County, Arkansas. They entered into a written contract by which appellant agreed to exchange 200 acres of his land for 80 acres owned by appellee. There was an encumberance on appellant's land in the sum of about $9,000, and on appellee's land in the sum of $3,500. Appellant agreed that he would assume the encumbrance on the land of appellee and appellee agreed that he would assume $5,000 of the encumbrance on appellant's land. In pursuance of the agreement the parties took possession of their respective tracts of land acquired by the exchange.

They also executed deeds to each other conveying the respective tracts exchanged and placed them in escrow in the First National Bank of Bentonville, to be delivered when appellant had arranged to have the 200 acres, which he agreed to exchange with appellee, carry only $5,000 of the mortgage debt. Appellant and appellee executed bonds each to the other in the sum of $500 for the performance of the contract. Appellant was to perform his contract by February 23, 1916. On February 29, 1916, appellee instituted this action against the appellant on his bond.

Appellee in his complaint set up the contract and bond and alleged that appellant had failed to comply with his contract and prayed for damages in the sum of $500.

Appellant answered denying the allegations of the appellee's complaint and set up by way of counter-claim that he had performed his contract, and alleged that

appellee had failed to comply with his contract. He set up the contract and bond and prayed for damages in the sum of $500.

The appellee contended and introduced testimony tending to prove that according to the understanding between them appellant was to clear the 200 acres he was exchanging to appellee from all encumbrances except the $5,000.

On the other hand, appellant contended and introduced testimony tending to prove that he had an agreement with appellee by which appellee was to pay appellant $5,000 which appellant was to pay on the mortgage in order to have the 200 acres cleared of the mortgage debt. Appellant testified that appellee was to make arrangements by which he was to borrow $5,000 on the 200 acres which he was to pay to the appellant, and in that event appellant was to pay the $5,000 on the $9,000 mortgage debt and have the 200 acres released from the encumbrance; that if the appellee had carried out his part of the contract appellant would have performed his.

Among other things, appellee testified in part substantially as follows: He told appellant that he did not like to turn over to him his place until the deal was absolutely closed; that he would give him time to make the deed if appellant would make him a bond whereby appellee could realize damages without going through the courts, stating some specified amount that appellant should pay and thus relieving the appellee of the necessity of going into court and proving the amount of the damages; that the amount was then named at $500, and that appellant agreed to this.

Appellant testified concerning the bonds as follows: "He (Kee) made a proposition to me to give a note for $500 to secure him in the event I did not comply with my contract on this loan. Mr. Craig suggested I give a kind of bond. I was willing to sign one and I told him that I thought I ought to have one too, and he finally gave me one. The bond I took from Mr. Kee was for $500 too."

Two witnesses, who were neighbors of the appellant testified that they heard appellant say, concerning the failure to consummate the deal between appellant and appellee as contemplated, that he, appellant, would have to let appellee have his place back and pay him $500.

There is a sharp conflict in the testimony as to what was the understanding between appellant and appellee about procuring the loan of $5,000 to pay on the mortgage on appellant's lands which he exchanged with appellee. But no testimony has been abstracted by the appellant which contradicts the above testimony of appellee showing the purpose for which the bond in suit was executed. So the testimony of the appellee concerning this must be taken as undisputed.

The written contract for the exchange of lands, the bonds, the correspondence, and the oral testimony went to the jury.

The court construed the bond in suit to be a contract for liquidated damages and submitted the issue to the jury on proper instructions as to whether or not the contract had been violated by the appellant or the appellee. The court instructed the jury that if they found the appellant had violated his contract they were to return a verdict in the sum of $500 in favor of the appellee, and if they found that the appellee had violated the contract they were to return a verdict in favor of the appellant in the sum of $500.

In *Westbay* v. *Terry,* 83 Ark. 144, there was an executory contract for the exchange of lands, just as there is here, and each party bound himself to the other in the penal sum of $100 for the faithful performance of the contract. In that case we quoted from the leading case of *Williams* v. *Green,* 14 Ark. 315, as follows: "Where the damages are at all uncertain or unliquidated, the parties ought to be allowed to anticipate and stipulate them if they choose to do so. * * * The real object of every stipulation for consequential damages is to secure the performance of the contract itself, and, but for the confusion of terms, it would be proper to say that covenants

to pay a certain amount of damages for breach of any undertaking have, to the extent that they are allowable, taken the place of penalties." Continuing we said: "The fluctuations in the market values of lands, and the contingencies likely to arise in almost every negotiation concerning real estate, which might cause or hinder the sale thereof, render the question of the damages caused by a failure to perform a contract for the exchange of same so indeterminable and uncertain as to be a proper subject for the parties in advance to liquidate by contract."

In *Montague* v. *Robinson,* 122 Ark. 167, Montague agreed to cut, within one year, merchantable timber of certain dimensions on a tract of land belonging to Robinson. In the event of failure to perform the contract he agreed to pay Robinson the sum of $600. In that case we said: "There is an increasing tendency on the part of the courts to construe such contracts as stipulations for liquidated damages rather than as agreements for penalties. And such contracts should be so construed where, from a prospective view of the contract, it appears that it was contemplated that damages would flow from a failure to perform the contract, that such damages would be indeterminate or difficult of ascertainment, and that the sum named bears some reasonable proportion to the damages which the parties contemplated might flow from a failure to perform."

The doctrine of the above cases is clearly applicable to the facts of this record.

The undisputed evidence clearly shows that the parties contemplated that in case of a failure to perform the contract the one failing to perform should pay to the other the sum of $500 as liquidated damages.

The ruling of the trial judge in so construing the contract was correct.

There is no reversible error in the record, and the judgment is, therefore, affirmed.