### SUTER *v.* MASON.

### Opinion delivered February 21, 1921.

1. DAMAGES—WHEN LIQUIDATED.—In a contract for the sale of 720
   acres of land for $54,000, the greater part of which was on de-
   ferred pyments extending over a period of eleven years, an agree-
   ment that the initial payment of $3,000 should be liquidated dam-
   ages in case the buyer failed to perform was not unreasonable
   nor void as a penalty, in view of the magnitude of the transac-
   tion and the risk of monetary depression.

2. VENDOR AND PURCHASER — FREEDOM FROM INCUMBRANCES.—An
   agreement to convey land clear of incumbrances does not refer
   to permanent easements across the land visible to the purchaser,
   such as a public road or the right-of-way of an electric light
   company.

3.  VENDOR AND PURCHASER — FRAUDULENT REPRESENTATION.—In a
    sale of a 720-acre tract of land, of which only 280 acres were
    cleared, the purchaser had a right to rely on the vendor's repre-
    sentation that 360 acres were cleared, as such representation
    could not be considered a matter of opinion only.

4.  VENDOR AND PURCHASER—FRAUDULENT REPRESENTATION.—Where a
    vendor represented the number of acres of cleared land to be
    360 when only 280 were cleared, the purchaser was entitled to
    rescind, though the vendor offered to clear up the deficiency of
    80 acres.

Appeal from Arkansas Chancery Court, Northern
District; *John M. Elliott,* Chancellor; affirmed.

STATEMENT OF FACTS.

On the 9th day of January, 1920, R. H. Suter brought
this suit in equity against the Bank of Stuttgart and
James S. Mason to recover the sum of $3,000 damages
for the failure of the defendant, Mason, to carry out a
contract made by him with the plaintiff for the sale of
720 acres of land in Arkansas County, Arkansas.

Mason filed an answer, in which he claimed that he
was entitled to rescind the contract because the title ten-
dered was insufficient and because the contract had been
procured by the fraudulent representations of the plain-
tiff.

In October, 1919, Dr. James S. Mason, a resident of
the State of Illinois, came to Arkansas County, Arkan-
sas, for the purpose of examining a tract of land belong-
ing to R. H. Suter with the view of purchasing it. Suter,
with his agent, went with Doctor Mason to the land for
the purpose of examining it. According to the testimony
of Doctor Mason, they drove over a part of the land, and
he was induced to make the contract on account of certain
representations made by Suter. Suter represented to
Doctor Mason that the tract comprised 720 acres and that
400 acres were in cultivation. Suter also represented
that the land was free from overflow and that there were
no incumbrances on the title. On the 27th day of Octo-
ber, 1919, the parties entered into a written contract
whereby Mason agreed to purchase the 720 acres of land
for the sum of $54,000. Of this amount $3,000 were de-

posited in the Bank of Stuttgart with a copy of the contract.

The contract provided that within twenty days thereafter Suter was to furnish a good abstract of title showing the land to be free from incumbrances, except two mortgages, which were described. A further payment of $5,000 was to be made on January 1, 1920. The balance of the purchase money was in deferred payments extending over a period of years from the date of the contract to January, 1931.

It was also provided that the initial payment of $3,000 should be liquidated damages in case Mason failed to carry out the contract on his part.

According to the testimony of Mason he had the cleared land surveyed soon after he signed the contract of purchase and found that there were only 280 acres of cleared land. He also ascertained that a material part of the land was subject to annual overflow to such an extent that it was not susceptible to cultivation. There was a public road running across the land, and an electric power company had a right-of-way across the land over which it had erected its poles. Mason also ascertained that the land was in a road improvement district, and that road improvement taxes would be levied on it for a period of more than twenty years. The testimony of Mason was corroborated by that of other witnesses.

According to the testimony of the plaintiff, Suter, he carried Mason over about three-fourths of the land, and Mason expressed himself as satisfied with what he had seen. Suter suggested to him that he had better examine the place more closely before he completed the contract of purchase. Mason replied that he had seen enough to satisfy him about the quality and condition of the land. Suter denied that he had made any false representations to Mason about the overflow of the land and testified that but a very small quantity of the land was subject to overflow. His testimony in this respect was corroborated by other witnesses. He said that Mason observed that the light poles were on the land, and that the light company had a right-of-way over the land at

the time they viewed it. Suter denied that he had represented to Mason that 400 acres of the land were in cultivation. He said that he told Mason that he had never surveyed the cleared land separate from the balance, but. that he thought that about one-half of the land was cleared, and that he based this opinion upon the fact that he had stepped off the cleared land and estimated it to be that much. His testimony was corroborated by that of other witnesses.

Other facts will be stated or referred to in the opinion.

The chancellor made separate findings in favor of the defendant on all the issues raised by the pleadings. The chancellor found that the $3,000 sued for was a penalty and not liquidated damages. He found that the plaintiff did not furnish an abstract of title showing a good and sufficient title in fee to the land in the plaintiff. He also found that Mason was induced by the fraudulent representations of the plaintiff, Suter, to enter into the contract for the purchase of the land.

A decree was entered in accordance with the findings of the chancellor, and the plaintiff, Suter, has duly prosecuted an appeal to this court.

*George C. Lewis,* for appellant.

1. The chancellor erred in finding that the contract was induced by fraud and misrepresentation, and that appellant had failed to show a good and sufficient title. The evidence fails to show any misrepresentations or fraud by appellant, but, admitting for argument that the representations were made and were untrue, the appellee is not in an attitude to complain. 71 Ark. 97; 87 *Id*. 567. A vendee of land seeking cancellation of the sale for false representations of the vendor must show that the representations induced him to purchase and that he relied upon them and had a right to so rely upon them in the belief of their truth. 11 Ark. 58; 47 *Id*. 148; 71 *Id*. 91. Taking the view of the testimony most favorable to defendant, the testimony fails to bring this case within

AKK.]          SUTER v. MASON.          509

the rule. 19 Ark. 522; 192 U. S. 232; 24 Sup. Ct. Rep. 259; 48 S. W. 729; 28 Fed. 708-12.

2. The chancellor erred in holding that, if the second payment should not be made and the notes and mortgage executed, the first payment should become the property of appellant *as liquidated damages* and all rights of both parties cease and determine and that it was in the nature of a penalty and not enforceable. 93 Ark. 371; 122 *Id.* 167.

3. The chancellor erred in his finding as to the sufficiency of the title. Appellee knew of the existence of the transmission line, the road and the road assessments before he signed the contract. The abstract of title disclosed all these assessments, and no objection was made, and this was a waiver. Maupin on Marketable Title to Real Estate (2 ed.), pp. 197-9; 146 Pac. 975; 168 *Id.* 633; 64 Misc. (N. Y.) 422; 124 N. Y. Supp. 370; 116 N. Y. 501; 22 N. E. Rep. 1087; 10 Am. St. Rep. 836. The fact that part of land conveyed with covenant of warranty was at time of conveyance a highway and used as such is not a breach of covenant. The decree should be reversed and judgment entered for appellant Bank of Stuttgart for $3,000 and interest.

*John L. Ingram,* for appellees.

1. The lands described were misrepresented in two respects, that they were free from overflow and that there were 400 acres cleared or open lands, when there were only 280¼ acres. These representations were false and material, and appellee had a right to and did rely on them. The evidence fully supports the decree. 71 Ark. 71; 99 *Id.* 438. See, also, 101 Ark. 95; 100 *Id.* 28.

2. Appellant failed to comply with his contract.

3. The sum sued for is a penalty, and not enforcible in equity. Fetter on Equity, pp. 96-107; 8 Am. Dec. 598; Eaton on Equity, pp. 99, 102; 1 Sutherland on Damages (3 ed.), pp. 733, 753; 1 Pomeroy, Eq. Jur. (2 ed.). The cases cited by appellant are not in point.

Hart, J. (after stating the facts). We are of the opinion that the chancellor erred in holding the $3,000 to be a penalty and not liquidated damages. The contract provided for the sale of 720 acres of land for $54,000, the greater part of which was on deferred payments extending over a period of eleven years. The contract contemplated that only the $3,000 and an additional $5,000 should be paid within a short time after the contract was completed. In view of the magnitude of the transaction and the consequent risk of a monetary depression, it was not unreasonable that the parties should agree that the $3,000 should be liquidated damages in case the purchaser failed to carry out the agreement on his part.

We also think that the chancellor erred in holding that the plaintiff did not have a good and sufficient title because there was a public road running through the land and because the electric light company had a right-of-way over the land for the erection of its poles. An agreement to convey land clear of all incumbrances does not refer to permanent easements across the land visible to the purchaser. Mason knew that the public road ran across the land when he purchased it. He also knew that the poles of the electric light company were across the land. He purchased the property in contemplation of its physical condition and with reference thereto. Therefore, the defendant can not rely upon the existence of the road and right-of-way across the land as matters calling for a rescission of the contract. *Skinner* v. *Stone,* 144 Ark. 353; *Geren* v. *Caldarera,* 99 Ark. 260, and *McCarthy* v. *Wilson* (Cal.), 193 Pac. 578.

In *Sandum* v. *Johnson,* Ann. Cas. 1914 D, p. 1007, the Supreme Court of the State of Minnesota held that the existence of an easement for a rural public highway across the land conveyed by a deed containing a covenant against incumbrances is not a breach of the covenant. The case note cites many decisions sustaining the holding that the existence of a known easement for a public highway does not constitute a breach of a covenant against the incumbrances.

Upon the question of fraudulent representations, we will first take up the question as to the deficiency in the acreage of the cleared land. According to the testimony of Mason, Suter represented that there were 720 acres of land in the tract and that there were 400 acres in cultivation. Mason believed this representation to be true, and the amount of the cleared land was a material inducement to him to make the purchase. After he had entered into the contract of purchase, he had the cleared land surveyed and ascertained that only 280 acres of the entire tract were cleared. Suter, himself, admitted that he told him that he thought that 360 acres of the land were cleared. Then, according to his own statement, there was a deficiency in the cleared land of eighty acres. The land was purchased for a farm, and the amount of cleared land on the tract was necessarily a factor in inducing the purchase. It is true that in transactions of this kind men are expected to exercise reasonable prudence and not to rely upon persons with whom they are dealing to protect their interests; but this requirement should not be regarded so that the law will ignore positive fraud. If the tract of land had been a small one and the parties had examined it, it might be said that, owing to the small area, the purchaser could not be deceived about the quantity of cleared land and could not rely upon the representations of his vendor about a matter which was patent to an ordinary observer and about which he could scarcely make a mistake if he relied upon his own judgment. This is not the case, however, in the sale of a large tract of land where the deficiency in the amount of cleared land is great in proportion to the whole number of acres conveyed. In such cases, the vendor can not say that the vendee ought not to have trusted him, and that his statement with regard to the number of acres of cleared land was only a matter of opinion which could not be considered as evidence of fraud.

In the present case Suter had had the land cultivated and had collected rent therefrom. The number of acres cleared and in cultivation was a matter peculiarly within

his own knowledge, and it can not be said that Mason was negligent in relying upon his representations in this respect. On account of the size of the tract, it can not be said that Mason could judge of the area of cleared land by the eye. Suter represented that one-half of the land was in cultivation. His representations in this respect were material, and under the circumstances were equivalent to an assurance of an approximately accurate measurement. Mason relied upon his assertions and representations in making the purchase. His representations could not be considered as a matter of opinion merely. Neither can it be said that Mason was negligent in relying upon them, and should have had the cleared land surveyed if he was not satisfied with his own measurement by viewing the land. When the size of the tract and situation of the cleared land is considered, Mason had a right to presume that Suter knew the amount of cleared land in the tract and was justified in relying on Suter's statement based on a better knowledge of the area of the cleared land than he could obtain by simply walking over it on one occasion. *Neely* v. *Rembert,* 71 Ark. 91; *Kincaid* v. *Price,* 82 Ark. 20; *Cooper* v. *Merritt,* 30 Ark. 686, and 39 C. J. 1270, and cases cited.

We think the court erred in finding that a material part of the land was subject to overflow. The testimony is in direct and irreconcilable conflict on this point; but we are of the opinion that a preponderance of the evidence shows that only a very small quantity of the land was subject to overflow, and that no rescission of the contract should be had on this ground. However, chancery cases are tried *de novo* upon appeal, and, inasmuch as the chancellor found that the defendant, Mason, was entitled to a rescission of the contract because there was a material deficiency in the amount of cleared land, it can not be said that the decree should be reversed.

It is claimed by counsel for the plaintiff that the decree should be reversed because Suter offered to make good the deficiency in the amount of cleared land and to clear up an additional quantity of land so that one-half

of the land in the tract would be cleared as he had represented it to be to Mason. This was not a matter, however, upon which Suter had the right to make an election. The election was for the purchaser. He might have accepted the contract and sued his vendor for an abatement of the purchase price on account of the damages suffered by him by reason of the deficiency in the amount of cleared land. On the other hand, he had the right to rescind the contract on account of the misrepresentations of his vendor as to the quantity of cleared land in the tract. As above stated, the deficiency was eighty acres, and under the circumstances the deficiency was great in proportion to the whole amount of cleared land in the tract. It follows that Mason had a right to rescind the contract, and the decree of the chancellor must be affirmed.