FORAN v. WISCONSIN & ARKANSAS LUMBER COMPANY.

Opinion delivered January 8, 1923.

1. MINES AND MINERALS—BOND OF LESSEE TO COMPLETE TEST WELL.—
   Under an oil and gas lease providing that a test well should be
   commenced within ninety days from date of the lease (for the
   performance of which a bond in the sum of $5,000 was executed),
   and further providing that if any of the land should be proved
   dry or should, in the opinion of the lessee, not contain oil or gas,
   the lessee should have the right to surrender such territory to
   the lessor, and, upon such surrender, should be under no further
   obligation to develop the surrendered territory, held, that the
   lessee did not have the right to surrender the contract so far
   as it related to the obligation to commence a test well.

2. APPEAL AND ERROR—CONSIDERATION OF EXCLUDED EVIDENCE.—Evi-
   dence improperly excluded by the trial court must be consid-
   ered in determining whether there was sufficient evidence to
   warrant submission of the issues to the jury.

3. MINES AND MINERALS—JURY QUESTION.—In an action by a lessor
   against his lessee to recover on a bond obligating lessee to com-
   mence a test well, evidence held insufficient to warrant submis-
   sion to the jury of question as to the existence of a subsequent
   agreement either to accept surrender of the lease or to extend
   the time for commencing the well.

4. DAMAGES—TEST AS TO LIQUIDATED DAMAGES.—The surest test as
   to liquidated damages is whether the actual damages caused by
   the breach would be uncertain and difficult of proof, and the sum
   stipulated appears to be a reasonable compensation.

5. DAMAGES—LIQUIDATED DAMAGES IN OIL LEASE.—A bond for $5,000
   provided in an oil and gas lease to be paid on failure to test
   an oil well within 90 days held to be liquidated damages, and not
   a penalty.

Appeal from Hot Spring Court; *W. H. Evans,*
Judge; affirmed.

*Roy M. Sayre* and *L. E. Sawyer,* for appellant.

The measure of damages would be the difference
between the value of the lease at the time made and the
value of the lease when breached. 57 Ark. 174.

*Cockrill & Armistead,* for appellee.

The contract and bond were *executed* as distin-
guished from *executory,* and *binding.* 161 Pac. 826. A
release would have to be supported by come considera-

tion. 121 Ark. 194. The evidence does not show an abandonment of the contract. 234 S. W. 504. The parties by mutual agreement could fix the amount of damages at the time the contract was entered into. 164 Fed. 305; 144 Cal. 494; 158 Pa. 277; 131 S. W. 660; 91 Pac. 913; 87 Ark. 545.

McCULLOCH, C. J. Appellee is the owner of a large body of timber and cut-over lands, consisting of about 13,000 acres, in Dallas County, and on May 5, 1920, entered into a written contract with appellant, A. E. Foran, whereby it leased to appellant said lands for the purpose of exploring for and producing oil and gas. The contract provided, in substance, for a lease of the lands in consideration of the payment of one dollar and the laying of pipe lines, and other things, and the performance of other stipulations set forth in the contract. It was also agreed that, if oil or gas was developed, royalties were to be paid to appellee by delivery of one-eighth of the product. It is provided in the contract that the lease shall remain in force for the term of one year from the date of the discovery of oil or gas in paying quantities in a well sunk by lessee in pursuance of this contract, and so long thereafter as oil or gas is produced on said lands in paying quantities by the lessee, his heirs or assigns, subject to the reservations and restrictions herein mentioned.

One of the clauses of the contract relating to the present controversy reads as follows:

"Third. The lessee covenants and agrees that development for oil and gas on all of the lands covered by this lease shall be prosecuted in a diligent manner and as is consistent with practical operation and development and as is recognized in the oil and gas industry as adequate and proper in order that the lessor may receive as early as possible the royalties provided for in this lease; said development in no event to be less than ten wells per year, after discovery of oil or gas in paying quantity, until the land is fully developed; provided that, if any of

said lands be proved dry or unproductive, or shall, in the opinion of the lessee, not contain oil or gas, said lessee shall have the right to surrender to the lessor, its successors or assigns, all of the rights of the lessee hereunder so far as the territory so released is concerned, and, upon such surrender, the lessee shall be under no further obligations to develop the surrendered territory. The failure on the part of the lessee to diligently develop the production of the lands held under this lease shall, in addition to rendering the lease subject to cancellation as hereinafter provided, render the lessee liable for the damages sustained by the lessor during the time development is so delayed.''

Certain other clauses bearing on the present controversy are as follows:

''Fourteenth. That the lessee, in consideration of the covenants and agreements herein contained, agrees and undertakes to drill, at a location to be selected by him, upon lands of the lessor, a well to a depth of three thousand five hundred (3,500) feet, such well to be commenced within three months from the date of the acknowledgment hereof by lessor, and to be completed to the depth aforesaid within one year from said date, unless oil or gas be found in paying quantities at a lesser depth, or unless a formation be encountered which would preclude further drilling on that account, in which latter event the lessee shall have the right to commence operations on another well within thirty days after the first well is abandoned; provided, however, that in the computation of such time the lessee shall not be liable or accountable for acts of Providence which would interfere with drilling operations, and shall not be held accountable if, after the well shall be begun in good faith, drilling operations are stopped or delayed by conditions over which he has no control, and he shall receive due credit for such time during which the drilling operations are so suspended.

"Fifteenth. Said lessee further agrees to execute and deliver to lessor a bond with sureties satisfactory to lessor in the sum of five thousand dollars ($5,000), conditioned that he, his heirs or assigns, shall fully and faithfully perform his aforesaid agreement to drill such well to the depth and within the time as herein speci· fied. * * *

"Seventeenth. It is further agreed that, in case a well is drilled as herein provided and neither oil or gas is discovered in paying quantities, this agreement shall thereupon cease and terminate, and lessee shall have no further rights hereunder; provided, that if a well is drilled as herein provided, and neither oil or gas is discovered in paying quantities, the lessee shall have the right to keep this lease in force for another year by beginning work or sinking a well on some of said lands within thirty days from the date of the abandonment of the well to be sunk in accordance herewith, and by prosecuting work thereon in accordance with this contract.

"Eighteenth. It is further agreed that, in case said lessee fails to fully and faithfully perform his agreement aforesaid in regard to the drilling of said well as herein provided, all rights of the said lessee hereunder shall cease and terminate, and he and the sureties on his said bond shall be jointly and severally liable to the said lessor in the said sum of five thousand dollars ($5,000) payable forthwith upon such breach, and it is expressly agreed that the said sum of five thousand dollars ($5,000) to be paid as aforesaid shall not be construed as or held to be in the nature of a penalty, but as stipulated damages for the nonfulfillment of this agreement by lessee and as a consideration to be paid for the rights and privileges granted herein. * * *

"Twentieth. The lessee has caused to be executed and delivered to lessor a surety bond in the sum of five thousand dollars ($5,000) guaranteeing that lessee will begin operations for drilling a well on said land within ninety (90) days from the date of the contract; and the

lessee shall, before the expiration of said bond, cause to be executed and delivered to lessor a surety bond in the sum of five thousand dollars ($5,000) in compliance with section fifteen of this contract, and if the lessee fails to provide the bond in accordance with said paragraph eighteen, the rights of the lessee under this agreement shall cease, and the bond guaranteeing the lessee will begin operation shall be considered as breached, and the lessee and his sureties on said bond shall be jointly and severally liable to lessor in the sum of five thousand ($5,000) dollars.''

Other sections of the contract have no bearing on this controversy.

At the time of the execution of the contract, Foran furnished a bond, as called for in the contract, with appellant, American Surety Company, as surety in the sum of $5,000. The terms of the bond, after reciting the provisions of the contract, read as follows:

''Now, therefore, the condition of this obligation is such that if the principal shall commence operations or cause to be commenced operations for the said exploiting for or production of oil, gas and other minerals within ninety (90) days from the date of the said lease aforementioned, then this obligation shall be null and void, otherwise to remain in full force and effect; provided, however, that this bond is executed upon the following conditions, performance of each of which shall be a condition precedent to any right of recovery thereon:

''First. That, in the event of default on the part of the principal, a written statement of the particular facts showing such default shall be delivered to the surety by registered mail at its office in the City of New York and State of New York, promptly, and in any event within ten (10) days after the obligee or its representatives shall learn of such default; that the surety shall have the right within fifteen (15) days after the receipt of such statement to proceed or procure others to proceed for the performance of such work; it shall also be

subrogated to all of the rights of the principal and any
and all moneys or property that may at the time such
default be due or thereafter may become due to the
principal.''

The drilling of the well was not commenced as stipu-
lated under the contract, and this action was instituted
by appellee against Foran and the surety on his bond to
recover the sum of $5,000 as liquidated damages for
breach of the contract and the terms of the surety bond.

Both of the appellants answered, denying that there
was a breach of the contract, and pleading that there
was a surrender and cancellation of the contract under
clause 3, and also that there was an agreement between
appellant Foran and appellee's agent for a release from
the terms of clause 14 of the contract respecting the com-
mencement of the well within ninety days, and that this
agreement of release discharged the surety as well as
operated as an extension of the time for the performance
of the contract so as to excuse appellant Foran for non-
performance.

Appellants also pleaded that the stipulated amount
in the bond was a provision for a penalty and was not
enforceable.

There was a trial of the issues before a jury, but the
court, at the conclusion of the introduction of testimony,
directed a verdict in favor of appellee for the full amount
named in the bond. Both of the defendants appealed.

It is first contended that appellant Foran had the
absolute right to surrender and cancel the contract under
clause 3, and that the court erred in excluding offered
testimony that there had been an offer to surrender and
cancel before the expiration of the time for the com-
mencement of the test well. The court excluded this tes-
timony on the ground that the lessee did not have the
right to surrender the contract so far as it related to the
obligation to commence and complete a test well.

We think that the court reached the correct conclu-
sion on this phase of the case. There was an absolute

obligation on the part of the lessee to commence a test well within ninety days from the execution of the contract and to complete it within twelve months, and this obligation was not affected by clause 3, which related to the right of surrender or cancellation. The purpose of the lease was for the exploration for gas and oil and the development of these minerals, if found. Pursuant to that design there was, as before stated, an unequivocal obligation on the part of the lessee to commence and complete a test well, regardless of any other rights that he might have under the contract. The purpose of clause 3 was to give the lessee the right to cancel the lease and relieve himself from all of the obligations of the contract except the one to commence and complete the test well. If it had been intended to make this right of surrender apply to the agreement to commence the test well, altogether different language would have been incorporated in the contract.

The contention of appellant is inconsistent with the express terms of the contract, for, if it was intended to give the lessee the right to cancel at any time, it would have been wholly unnecessary to require him to give a bond to perform the terms with relation to the commencement and completion of the test well. Surety to perform this part of the contract would have been ineffectual if the lessee had a right to cancel at any time and in that way escape the performance of that part of the contract.

It is next contended that there was evidence sufficient to establish a contract between appellant and Cook, the agent of appellee, for the release or cancellation of contract which discharged the surety, and also that the agreement was sufficient to authorize an extension of the time for the commencement of the well. These contentions call for an examination of the testimony on this subject.

The court excluded, as before stated, the offered testimony of Foran to the effect that he had, after caus-

ing the lands to be examined by a geologist and finding there was no prospect for oil or gas, notified appellee of his intention to surrender in accordance with the third clause in the contract. The excluded testimony must, of course, be considered in determining whether or not there was sufficient evidence to warrant a submission of the issues to the jury. In addition to that, appellant Foran testified that he had a conversation with Mr. Cook, the agent of appellee, about two weeks after the execution of the contract, in which the following occurred (quoting the precise language of the witness):

"A. After the examination of the lands in question, with my geologist, I went and saw Mr. Cook, and told him I had been all over every part of the land, and that it was very mountainous, and that we, both the geologist and myself, had come to the conclusion that it would be absolutely useless to drill a well there for oil, and I thought it was the honorable thing, and the best thing, to come to him at once and tell him the facts of our conclusion. Q. Now, what did he say to you? A. He said, 'Mr. Foran, Mr. Edgar, who is president of our company at the present time, is not here, but I feel sure that Mr. Edgar, or the company, wouldn't want you to drill a well on these lands, if such is the case. I would suggest you having a geologist go over our adjacent lands, and perhaps he may think better of them, and, if so, the acreage might be exchanged. In the meantime,' he said, 'I would let the matter stand'."

This statement of Cook's, as detailed by appellant, does not, we think, constitute either an agreement for a release or for an extension of time, nor was it such a statement as was calculated to mislead appellant and induce him to defer action in the performance of the contract. Cook did not, according to this statement, assume to act for the company, but, on the contrary, the effect of his statement was to notify Foran that Mr. Edgar, the the president of the company, was the one to act upon the matter. It is clear that Cook was merely stating his

opinion as to what Edgar would do with the proposition, and the statement about letting the matter stand was merely a suggestion made by Cook without any appearance of offering it as a contract or agreement. Appellant had no right to act upon this statement of Cook's and waste away the time allotted to him under the contract for the commencement of the test well, or at least of ascertaining from authoritative sources, namely, the president of the company himself, before the expiration of the time, whether or not strict performance of the contract would be required. Instead of that, the evidence shows that Foran waited until after the expiration of the contract before asking for definite terms, and he was then told that it was too late, as the time for performance of the contract had expired.

Cook testified as a witness, and denied that he had any such conversation with Foran, but, of course, if Foran's testimony was sufficient to warrant a submission to the jury, the court ought not to have taken the case away from the jury by peremptory instructions. We think, however, that the testimony of Foran was not sufficient to warrant a submission of the issue to the jury, for, taking the conversation just as related by Foran, it does not show that Cook entered into any agreement either for the surrender of the contract or for an extension of time.

Finally, it is argued that the contract specifies a penalty and not liquidated damages, or at least that such is the effect of the contract under the facts of this case.

There is no proof as to the amount of damages, but the nature of the contract may be determined from its own terms. The obvious purpose of this provision was, as before stated, to provide for a speedy exploration for minerals by commencing a test well within ninety days and completing it within a year. There was a large body of land owned by appellee, and it was important to appellee, in view of rapid developments in this State concerning the production of oil and gas, to have this test well

commenced and completed so as to determine whether or not there were minerals to be found underneath any part of this large body of lands. The contract itself contemplates that there might be damages on account of delay, and this justified the parties in putting in a provision for the payment of damages stipulated in amount.

It is sometimes difficult to determine, under a contract of this sort, whether the provision is for penalty or stipulated damages. In *Nilson* v. *Jonesboro,* 57 Ark. 168, Judge MANSFIELD, speaking on this question, said:

"Such questions are regarded as exceptionally vexatious, and the courts have not been guided to their solution by any rule applicable alike to all cases."

Further on in the opinion he stated the test to be: "Where the contract is of such a nature that the damage caused by its breach would be uncertain and difficult of proof, the sum named by the parties is generally held to be liquidated damages, if the form and language of the instrument are not unfavorable to that construction and the magnitude of the sum does not forbid it."

In many decisions rendered by this court since that date the case of *Nilson* v. *Jonesboro* has been followed, and it is quite well settled by our decisions that the surest test of liquidated damages is "where the actual damages caused by the breach would be uncertain and difficult of proof, and the sum stipulated appears to be reasonable compensation." *Stillwell* v. *Paepcke-Leicht Lbr. Co.,* 73 Ark. 432; *Chickasawba Rd. Co.* v. *Crigger,* 83 Ark. 364; *Tidwell* v. *So. Engine & Boiler Wks.,* 87 Ark. 52; *Cox* v. *Smith,* 93 Ark. 371; *Wait* v. *Stanton,* 104 Ark. 9.

We decided in those cases that the question must be determined in the light of the situation as it stood at the time the contract was executed, and not at the time the controversy arose. Tested by these rules, we are of the opinion that this was a contract for liquidated damages, and, as such, was enforceable for the full amount named.

The judgment will therefore be affirmed.