ROBBINS *v.* PLANT.

## Opinion delivered July 4, 1927.

1. CONTRACTS—RESTRAINT OF TRADE.—Whether a contract is void, as in restraint of trade, depends on the facts of each case, there being no hard and fast rule as to what contracts are void.

2. CONTRACTS—RESTRAINT OF TRADE.—A person may legally purchase a business of another for the purpose of removing competition, with an-agreement on the part of the seller not to carry on the same business in the same place for a limited period of time.

3. CONTRACTS—PREVENTING COMPETITION.—A contract whereby the seller of a business is prevented from re-engaging in such business, so as to protect the buyer in the enjoyment of what he has purchased, and to enable the seller to get the full value of his property, including the good will of the business, does not prevent other persons from entering the business and does not injure the public.

4. DAMAGES—LIQUIDATED DAMAGES.—Where the damages for breach of a contract are in their nature uncertain and difficult of ascertainment, the amount to be paid may be stipulated for by the terms of the contract.

5. DAMAGES—WHEN LIQUIDATED.—The contract between the buyer and seller of the business, binding the seller in the sum of $10,000 not to re-enter or assist any one in entering into the same business for 20 years, *held* intended to provide for stipulated damages, and not for a penalty.

6. DAMAGES—REASONABLENESS OF LIQUIDATED DAMAGES.—The reasonableness of stipulated damages must be determined by the facts and circumstances at the time the contract was entered into, and not when the contract was breached.

7. DAMAGES—RIGHT TO RECOVER LIQUIDATED DAMAGES.—Where a contract provides for a definite sum as the liquidated or stipulated amount to be paid upon a breach thereof, the amount so fixed may be sued for in case of a breach and it is not necessary for the plaintiff to prove any actual loss by reason of such breach, as the contract substitutes the amount agreed upon for actual damages resulting from the breach.

8. DAMAGES—STIPULATED DAMAGES NOT PENALTY WHEN.—In a purchase of a gin plant for $10,000, half of which was for the value of the plant, and half for good will, stipulated damages of $10,000 in case of breach by the seller of his covenant not to re-enter or to assist any one in entering into competitive business for a period of 20 years in the same place, *held* not so disproportionate to the damage which might result from the competitive business

as to show that the parties intended a penalty and not liquidated damages.

9. CONTRACTS—BREACH—SUFFICIENCY OF EVIDENCE.—In an action to recover stipulated damages for breach of the contract by the seller of a business not to enter into competition of the buyer, or to aid any one else in so doing, evidence *held* sufficient to warrant a finding that the seller aided and assisted another in setting up a rival gin in the territory embraced in the contract, entitling the buyer to recover stipulated damages.

10. TRIAL—INSTRUCTION SINGLING OUT FACTS.—In an action to recover damages for breach of a contract for sale of a business, in which the seller agreed not to assist any one in entering into competition with the buyer, a requested instruction that the use, by the person aided in constructing a competitive business, of a public well on the seller's land, consented to by the buyer, would not constitute a breach of contract by the seller, *held* properly refused, as singling out facts and making recovery dependent thereon.

Appeal from White Circuit Court; *E. D. Robertson,* Judge; affirmed.

STATEMENT OF FACTS.

W. E. Plant sued E. A. Robbins, W. L. Robbins and E. Blackburn to recover $10,000 damages for the alleged breach of contract by the defendants not to enter into competition with the plaintiff in the gin business or to aid or assist any one else in doing so for a period of twenty years in Kentucky Township, White County, Arkansas. The defendants denied aiding and assisting any one to operate a gin in competition with the plaintiff at the place mentioned in the complaint, and denied that there was any consideration for said contract. The defendants also claimed that the amount named in the contract was intended as a penalty and not as liquidated damages.

W. E. Plant was the principal witness for himself. According to his testimony, on the 17th day of February, 1923, he purchased a gin from E. A. Robbins, W. L. Robbins and E. E. Blackburn, under their firm name of E. A. Robbins & Company, and received a deed from them for the gin and lands on which it was situated, in the town of Rose Bud, in Kentucky Township, White County, Arkansas. He paid $1,000 in cash and executed

notes for the deferred payments, all of which have been paid. Five thousand dollars of the purchase price was intended to be for the value of the gin plant and the remaining $5,000 for the good will of the business. On the same day, and as a part of the contract for the purchase of the gin, the defendants executed to the plaintiff a contract which is the basis of this suit, and which reads as follows:

"Contract made and entered into on the 17th day of February, 1923, between E. A. Robbins & Company, parties of the first part, and W. E. Plant, party of the second part, as follows:

"The parties of the first part have this day sold to the party of the second part their entire gin outfit and gin right in Kentucky Township, White County, Arkansas, for the sum of $10,000, payments of same being described in deed of even date of this contract. If the party of the second part makes all payments when due as prescribed in said deed, then and in that event the parties of the first part bind themselves in the above mentioned sum to the party of the second part not to enter in the ginning business or aid or assist any one in entering into same for a term of twenty years from the date of this contract.

"E. A. Robbins & Company,<br>"By W. L. Robbins."

Some time in the spring of 1925 C. L. Thompson built a gin in Rose Bud within an eighth of a mile of the gin of the plaintiff, and, in the fall of that year, entered into competition with the plaintiff. The land on which Thompson built his gin was bounded on two sides by the land of the defendants. Thompson built his gin three or four feet from his boundary line next to the defendant's land. Frequently, in unloading cotton, the horses would have to stand on the land of the defendants. Thompson also used water in operating his gin from a well on the land of the defendants. The only access had to Thompson's land was through a park belonging to the defendants. Prior to the erection of the gin by Thompson,

this park had been closed, but the defendants opened it just prior to the time that Thompson built his gin. Sand and rock used in erecting the gin were hauled from the land of the defendants. Thompson stacked wood which was used in the operation of his gin upon the land of the defendants. Plaintiff valued his gin property at $5,000 when he bought it from the defendants and valued the good will of the business at not less than $5,000. Other witnesses corroborated the testimony of the plaintiff to the effect that there was no access to Thompson's land except through the park belonging to the defendants, and that this park had been closed until just prior to the erection of the gin by Thompson. Various witnesses also testified that, after the gin had been erected by Thompson, one of the defendants advised them to haul their cotton there, and told them that Thompson ginned the cotton cleaner than Plant.

W. J. Walters was a witness for the plaintiff, and testified that he worked for Thompson sixteen or seventeen days while he was erecting his gin. He saw E. A. Robbins there twice a day while he worked there. Robbins came in the morning and once in the afternoon during the sixteen or seventeen days Walters worked there. Material for building the gin was assembled in the park belonging to the defendants. The park was closed until about the time the gin was built. The gin could not be reached except by going through the park belonging to the defendants. Sometimes Robinson and Thompson would talk thirty minutes while the work of erecting the gin was going on.

According to the testimony of the defendants, they were not interested directly or indirectly in the erection of the gin by Thompson. They only allowed him to use the water from their well because they understood that the plaintiff did not object to it. They did not grant Thompson permission to haul material from their land to be used in erecting his gin nor did they know or allow him to assemble material there for the purpose of erecting his gin. They were not interested in another

gin being located in Rose Bud, except that they wished the farmers to have a gin which would gin their cotton clean.

Other facts will be stated under appropriate headings in the opinion.

The jury returned a verdict in favor of the plaintiff in the sum of $10,000, and from the judgment rendered the defendants have duly prosecuted an appeal to this court.

*Yingling & Taylor* and *Brundidge & Neelly*, for appellant.

*John E. Miller* and *Culbert L. Pearce*, for appellee.

HART, C. J., (after stating the facts). There is no hard-and-fast rule in this State as to what contracts are void as being in restraint of trade, and each case must be judged according to its own facts and circumstances. It is also well settled that a person may legally purchase the business of another for the purpose of removing competition, with an agreement on the part of the seller not to carry on the same business in the same place for a limited period of time. Covenants of this kind operate to prevent the seller from engaging in a business which he sells, so as to protect the buyer in the enjoyment of what he has purchased and to enable the seller to get the full value of his property, including the good will of his business. In general this does not injure the public, because the business is open to all other persons, and there is little danger that it will suffer harm, if the business is profitable. The agreement could in no sense prevent other persons from entering the business, if they should see it was a profitable one. *Shapard* v. *Lesser,* 127 Ark. 590, 193 S. W. 262, and cases cited; *Wakenight* v. *Spear & Rogers,* 147 Ark. 342, 227 S. W. 419; and *McSpadden* v. *Leonard,* 159 Ark. 193, 251 S. W. 694.

The closest question in the case at bar is whether or not the $10,000 mentioned in the contract should be treated as a penalty or as liquidated damages. It is the settled law of this State that, where the damages for breach of contract are in their nature uncertain and

difficult of ascertainment, the amount to be paid may be stipulated for by the terms of the contract. In the early case of *Williams* v. *Green,* 14 Ark. 315, the court said that parties may stipulate the amount of damages for breach of an agreement "not to carry on a rival trade or business, within certain limits, where the breach may consist in acts of frequent recurrence, and the damages are in some degree conjectural." The case of *Nilson* v. *Jonesboro,* 57 Ark. 169, 20 S. W. 1093, is a leading case on the difference between liquidated damages and a penalty. In discussing the question the court said:

"The authorities, however, show that, where the intention to liquidate the damages is not obvious, the stipulated sum will be given the effect of a penalty if it exceeds the measure of a just compensation and the actual damage sustained is capable of proof. (Citing authorities). But, where the contract is of such a nature that the damage caused by its breach would be uncertain and difficult of proof, the sum named by the parties is generally held to be liquidated damages, if the form and language of the instrument are not unfavorable to that construction and the magnitude of the sum does not forbid it."

As said in *Blackwood* v. *Liebke,* 87 Ark. 545, 113 S. W. 210, "But the question is not as to the status of the parties at the time when the contract terminated, but as to the status of the parties at the time they made the contract. It may be, as the contract works out, that it would be easy to ascertain the damages for the breach of it, or to prove that there were none. But, if the status of the parties at the time of the contest was such that it would be difficult or impossible to have anticipated the damage for a breach of it, and there was a positive element of damage, then, under the authorities, there is no reason why that may not be anticipated and contracted for in advance."

To the same effect see *Wait* v. *Stanton,* 104 Ark. 9, 147 S. W. 446; *Welbourn* v. *Kee,* 134 Ark. 361, 204 S. W. 220; *Suter* v. *Mason,* 147 Ark. 505, 227 S. W. 782; *Foran* v. *Wisconsin & Arkansas Lumber Co.,* 156 Ark. 346, 246

S. W. 848; and *McSpadden* v. *Leonard,* 159 Ark. 193, 251 S. W. 694.

The same rule has been adopted by the Supreme Court of the United States, and the rule itself and the reasons for it are clearly stated in *Wise* v. *United States,* 249 U. S. 361, 39 S. Ct. 303, 63 L. Ed. 805. Mr. Justice Clarke, who delivered the opinion of the court, said:

"The result of the modern decisions was determined to be that, in such cases, courts will endeavor, by a construction of the agreement which the parties have made, to ascertain what their intention was when they inserted such a stipulation for payment of a designated sum or upon a designated basis, for a breach of a covenant of their contract, precisely as they seek for the intention of the parties in other respects. When that intention is clearly ascertainable from the writing, effect will be given to the provision, as freely as to any other, where the damages are uncertain in nature or amount, or are difficult of ascertainment, or where the amount stipulated for is not so extravagant, or disproportionate to the amount of the property loss, as to show that compensation was not the object aimed at or as to imply fraud, mistake, circumvention or oppression. There is no sound reason why persons competent and free to contract may not agree upon this subject as fully as upon any other, or why their agreement, when fairly and understandingly entered into with a view to just compensation for the anticipated loss, should not be enforced."

We are of the opinion that, tested by this rule, the agreement of the amount of $10,000 named in the contract in the case at bar should be treated as stipulated damages and not as a penalty. It is true that, according to the evidence for the defendants, the contract in question was not executed until after the deed for the land and the gin plant had been executed and delivered, and was entirely an afterthought on the part of the purchaser, and there was no consideration for it. On the other hand, according to the testimony of the plaintiff, the contract not to enter into the gin business in competition with

him was a part of the consideration for the purchase of the gin plant from the defendants. The gin was an old one, and the plant itself was not worth more than $5,000. The plaintiff valued the good will of the business at $5,000, and, for this reason, agreed to pay $10,000 for the gin plant. The contract was to last for twenty years, and breach of it, in the very nature of things, might be of frequent recurrence, and damages would be to some degree conjectural. The defendants might encourage or assist some one to enter into the gin business in competition with the plaintiff for a certain year, and the actual damage suffered might be small. However, if the plaintiff should bring suit for a breach of the contract, that would end the matter, and he could not bring a second suit if the defendants should, the next year or any subsequent year, induce others to set up a rival gin in the same place. As pointed out by this court, the status of the parties must be considered as of the date when they made the contract and not when it was breached. For this reason the reasonableness of the damages stipulated must be determined by the facts and circumstances at the time the contract was entered into, and the fact that no loss has in fact resulted from the breach of the contract does not affect the plaintiff's right to recover. As pointed out above, in making contracts in partial restraint of trade and stipulating for damages for a breach thereof, the seller has in view the obtaining the full value of the good will of his business in making the sale, and the purchaser has in view the right to protect himself in buying the good will by preventing the seller from entering into competition with him. It is apparent that the good will would be at least materially lessened in value if the seller was at liberty to at once establish a rival business in the same place. Other cases holding that the amount stipulated in the contract as liquidated damages for a breach thereof which may be recovered in the event of a breach of the contract, even though no actual damages are suffered as a consequence of such breach, may be found cited in a case-note to 34 A. L. R. 134. Among

the cases cited is that of the *United States* v. *Bethlehem Steel Co.,* 205 U. S. 105, 27 S. Ct. 450, 51 L. Ed. 731, where the court approved the rule comprehensively stated and discussed in *Sun Printing & Publishing Association* v. *Moore,* 183 U. S. 642, 22 S. Ct. 240, 46 L. Ed. 366.

These cases hold that, if the contract provides for a definite sum as the liquidated or stipulated amount to be paid upon a breach thereof, then the amount so fixed upon by the parties may be sued for; and it is not necessary for the plaintiff to prove any actual loss by reason of the defendants' breach of the contract. All that is necessary to entitle the plaintiff, in such a case, to recover the stipulated sum, is to show the breach of the contract upon which the payment thereof depends. In other words, the effect of a clause for stipulated damages is to substitute the amount agreed upon as liquidated damages for the actual damages resulting from the breach of the contract, and thereby prevent a controversy between the parties as to the amount of damages.

The damages for a breach of a contract of this kind extend over a period of twenty years, and are uncertain, and, when the surrounding circumstances are considered, together with the purpose sought to be accomplished, the sum of $10,000 is not so extravagantly disproportionate to the damage which might result from the defendants entering into or aiding any one else to enter into the gin business in the territory named in the contract in competition with the plaintiff, as to show that the parties must have intended a penalty and could not have meant liquidated damages.

It is next contended that the evidence is not legally sufficient to show that the defendants aided and assisted Thompson in setting up a rival gin in the town of Rose Bud, Kentucky Township. The testimony on this point was conflicting, but the question was submitted to the jury on proper instructions. The evidence for the plaintiff, if believed by the jury, was legally sufficient to warrant a finding that the defendants aided and assisted Thompson in setting up a rival gin in the territory

embraced in the contract. According to the evidence adduced for the plaintiff, the defendants allowed Thompson to assemble his building material on their land and to pile upon their land the wood which he used in operating the gin. The gin plant was erected within three or four feet of Thompson's boundary line, and that it was apparent that the land of the defendants, which was next to it, must necessarily be used in unloading cotton at the gin. One of the defendants was there at the gin twice each day for fifteen or sixteen days during the erection of the gin. The jury might have inferred that he must have known these facts. In addition, he was seen to have frequent extended conversations with Thompson at the place where the gin was being constructed during the time of its erection. After the gin was put in operation, the defendants advised various persons to have their cotton ginned with Thompson, and said that it would be ginned cleaner by Thompson than by Plant.

The jury was instructed that the burden of proof was upon the plaintiff to show that the defendants in some substantial way aided or assisted Thompson in entering the gin business in the town of Rose Bud, and that, unless it should find these facts by a preponderance of the evidence, the verdict should be for the defendants. The evidence for the plaintiff is legally sufficient to sustain a finding by the jury that the defendants aided and assisted Thompson in setting up his gin and operating it, in violation of the contract.

The court also instructed the jury that, if the contract sued on was executed after the sale of the gin plant was consummated and was no part of it, then such contract was void, and the verdict should be for the defendants, in accordance with the principles of *Kimbro* v. *Wells,* 112 Ark. 126, 165 S. W. 645.

The respective theories of the parties to this lawsuit were fully and fairly submitted to the jury under proper instructions. It is urged, however, by counsel for the defendants, as a reason for a reversal of the judgment, that certain instructions asked for by the defendants

were refused by the court.   We do not deem it necessary to review these instructions or to discuss them separately, for the reason that, as above stated, in the instructions given at the request of the plaintiff and of the defendants, their respective theories were fully covered, and all disputed questions of fact were fairly submitted to the jury.

It is earnestly insisted, however, that the court erred in refusing to give instruction No. 7 at the request of the defendants.   The instruction reads as follows:

"You are instructed that, if you find from the testimony that C. L. Thompson had used water from a public well that was open to the public, though situated upon the lands of the defendants, or either of them, in the construction and building of his gin, and if you further find that the same was used by and with the consent of the plaintiff and without objection from him, then this fact would not constitute a breach of the contract sued on herein, and your verdict should be for the defendants."

There was no error in refusing to give this instruction. This court has frequently said that the trial court is not required to single out facts and make the verdict of the jury dependent upon whether they are true or not. The jury might have found that the plaintiff did not object to Thompson using water from the well situated in the park of the defendant and still thought that the contract had been breached in other ways, as testified to by the witnesses for the plaintiff, and that, on this account, the plaintiff was entitled to recover the damages stipulated, if there was a breach thereof.

We find no prejudicial error in the record, and the judgment will therefore be affirmed.

KIRBY, J., dissents.