## SMITH *v.* BEARD.

Opinion delivered February 10, 1930.

*W. O. Young,* for appellant.

BUTLER, J. Mrs. Ruban Smith, an aged woman living in Benton County, Arkansas, on the 10th day of January, 1928, being the owner of a tract of land in said county, conveyed by warranty deed twenty acres of the same to her son, Ed Smith. A short time thereafter she died, and her remaining sons and daughters, and their representatives brought suit in the chancery court to can-

cel the deed for lack of mental capacity of the grantor to execute the same, and for undue influence exercised by the grantee in the procurement thereof. After having heard the testimony in the case, the chancellor entered a decree in compliance with the prayer of the complaint cancelling the deed, from which decree this appeal is prosecuted.

The appellant has abstracted only a part of the testimony, dismissing that of Huel Smith with the statement that "his testimony could not be material." As was held in the case of *Power Mfg. Co.* v. *Arkansas Rice Growers Co-Op. Ass'n.*, 170 Ark. 771-6, 281 S. W. 379, the testimony of a witness cannot be ignored because of the mere statement that it is not important in the case, thereby substituting the opinion of counsel for that of the court, and, under the well-established rule, where the appellant has failed to set out all the testimony in his abstract, it will be presumed that the decree is justified by the testimony given. *Grimes* v. *McKee*, 162 Ark. 196, 258 S. W. 134; *Thompson* v. *Buchanan*, 134 Ark. 361, 203 S. W. 1015; *Bramble* v. *College Hill L. & T. Co.*, 149 Ark. 669, 232 S. W. 758.

We have examined the record in this case, and find that the testimony of Huel Smith was to the effect that he was a son of Mrs. Ruban Smith, a very old woman, and that on the 9th of January, 1928, he received a telegram stating that his mother was very ill, and for him to come home; that he reached home sometime in the night of the 10th, and saw his mother early on the morning of the 11th; that at that time she was so ill as to be incapable of recognizing him; that he remained with her until she died a few days later, and that she had only been able to recognize him one time before she passed away. The evidence in the case shows that Mrs. Smith was a very old woman at the time of her death, and that she had been stricken with paralysis about five years before her death, and from that time on her physical condition was very bad, and her mind much affected. She and

her son, Ed Smith, lived in the home together alone for some time after she was stricken—for about a year or a year and a half—when he married, and from that time he and his wife continued to live with Mrs. Ruban Smith until a few months before her death, when she was moved to the home of one of her daughters. She suffered a second stroke just a few days before the execution of the deed in question, and before her death. Her physician who attended her on the 9th of January, the day before the execution of the deed, stated that, while she was not crazy, she was not mentally capable of understanding the nature and effect of her act, and that her mind was as that of a little child.

There was testimony to the effect that Mrs. Smith had been requested to make a deed to her son, Ed, and that she refused to do so on the ground that Ed had not been treating her right. There was considerable evidence also, besides that of the attending physician, to show that Mrs. Smith's mind was so impaired as to render her incapable of transacting any kind of business, and, while the evidence was conflicting on this point, there being other testimony to the effect that she was able to know what she was about and to realize the consequences of her act, and that she had intended to make the deed to Ed, we cannot say that the finding of the chancellor was against the preponderance of the evidence.

We are of the opinion that under the rule as stated in *Kelly's Heirs* v. *McGuire,* 15 Ark. 603, the evidence is sufficient to sustain the holding that the execution of the deed was not the free act of Mrs. Ruban Smith. In that case it was said: "If a person, although not positively *non compos* or insane, is yet of such great weakness of mind as to be unable to guard himself against imposition, or to resist importunity or undue influence, a contract, made by him under such circumstances, will be set aside. And it is not material from what cause such weakness arises. It may be from temporary illness, general mental imbecility, the natural incapacity of early infancy,

the infirmity of extreme old age, or those accidental depressions which result from sudden fear, constitutional despondency, or overwhelming calamities. And, although there is no direct proof that a man is *non compos* or delirious, yet, if he is of weak understanding, and is harassed and uneasy at the time, or if the deed is executed by him *in extremis,* or when he is a paralytic, it cannot be supposed that he had a mind adequate to the business which he was about.''

As we have seen, Mrs. Ruban Smith had been a paralytic for five years, and on or about the 9th of January, 1928, suffered a second stroke which was of such severity as to cause apprehension of the imminence of her death. Her children were sent for, and, while she was lying in a helpless condition with the mind of a little child, her son, Ed Smith, procured the description of her property, and the drafting of the deed which she signed on the 10th of January, 1928, by her mark, and within a few days thereafter she died. Applying the rule above stated to the testimony believed by the chancellor, we think it was sufficient to warrant the conclusion reached. The decree is therefore affirmed.