STILLWELL v. PAEPCKE-LEICHT LUMBER COMPANY.

Opinion delivered December 24, 1904.

1. CONTRACT—PENALTY AND LIQUIDATED DAMAGES DISTINGUISHED.—Upon the question whether the sum designated as a profit for breach of a contract is a penalty or liquidated damages, the usual and surest test that it is liquidated damages is that the actual damages caused by such breach would be uncertain and difficult of proof, and the sum stipulated seems to be a reasonable compensation for the injury occasioned thereby. (Page 435.)

2. SAME—WHEN FORFEIT TREATED AS PENALTY.—Where a stipulation for a forfeit for breach of a contract is uncertain by its terms, and the sum stipulated does not seem to be a reasonable compensation for the injury occasioned by such breach, it will be treated as a penalty, and will not be enforced further than the actual damage sustained. (Page 436.)

3. PENALTY—INSEPARABILITY.—A stipulation for a forfeit for breach of a contract cannot be separated, and a part discarded as a penalty, and the remainder treated as liquidated damages. (Page 436.)

4. CONTRACT—MEASURE OF DAMAGES.—The measure of damages for breach of a contract to cut, remove and pay for all of the cottonwood timber on certain land within a designated time is the difference between the contract price and the market value of the timber left standing on the land at the time of the breach. (Page 436.)

5. DAMAGES—EVIDENCE.—In an action to recover the value of logs converted, it was error to refuse to permit defendant to testify concerning the difference between the value of such of the logs as

were floating in the water and such as were lodged in the sand, as such testimony tended to prove the value of the logs when converted. (Page 437.)

Appeal from Arkansas Circuit Court.

GEORGE M. CHAPLINE, Judge.

Reversed.

### STATEMENT BY THE COURT.

Appellant, who was the owner of a tract of timber land, entered into a written contract with appellee's assignor, the Speer-Box Lumber Company, for the sale of all the cottonwood timber of certain size suitable for saw logs.

The material part of the contract reads as follows: "That the parties of the first part, for and in consideration of the covenants on the part of the party of the second part hereinafter contained and set forth, do covenant and agree to and with the said party of the second part to pay the party of the second part $100 as a forfeit at the time this contract is signed, and then to cut and put into the Arkansas River all cottonwood timber suitable for saw logs and measuring eighteen inches in diameter and over thirty-two feet from the ground, on the land of the party of the second part, comprised in fractional sections 12 and 13, township 8 south, range 3 west, and fractional sections 7, 17, 18, 19 and 20, township 8 south, 2 west, all in Desha County, Arkansas, and south of the Arkansas River. And the parties of the first part further agree not to run any of the timber until it is paid for at the rate of forty-five (45) cents per thousand feet. * * * And the parties of the first part further agree to board the said scaler free of charge, and to pay the same, $1. And it is further understood and agreed that the logging shall be conducted in such way as not to interfere with the farming interests of said lands, and all of said timber shall be removed on or before December 1, 1899. And, in case the parties of the first part shall fail in any part of their agreement as set forth in this contract, then they shall forfeit the above $100, which shall at once become the property of the party of the second part, and they shall also forfeit all the rights under this contract and quit

and leave said land, and also leave all timber that has not been run. And the party of the second part agrees to sell said cottonwood timber, when it has been scaled, at the rate of 45 cents per thousand feet, and in the last settlement, if the parties of the first part have fulfilled in every particular their part of this contract, to account to them for the above $100, or by crediting on the last logs or timber. It is understood that the timber shall remain the property of the party of the second part until paid for, independent of any claim of the parties of the first."

The contract was assigned by the Speer-Box Lumber Company to appellee, and the latter assumed the performance of the contract, and, pursuant thereto, cut a large quantity of timber, all of which was removed from the land and paid for, except 416,000 feet. Of this amount 16,052 feet remained lying in the woods on December 1, 1899, and the remainder had been hauled, and was in the Arkansas River, and by a sudden rise in the river was broken loose from its moorings and floated off. Appellee's agents caught the greater part of it lower down the river, and tied it up, and later the appellant took possession and sold it. Appellee offered to pay for the balance of the timber which had been cut and had not been paid for, after deducting the sum of $100 named in the contract, but coupled with the offer a stipulation that the sum so offered should be accepted by appellant in full, which offer appellant refused, and appellee commenced this suit for the conversion of the timber. Appellant answered, denying the conversion, and claiming that appellee had failed to comply with the contract, either by cutting all the timber or by paying for the part cut, and also made a counterclaim against appellee for damages in the sum of $1,000 on account of such failure to perform the contract.

There was conflict in the testimony as to whether appellee cut all the timber on the land. Appellee's witnesses testified that all the merchantable timber was cut; and appellant and his witnesses testified that a large quantity of the timber, about 600,000 feet, remained standing, and that appellee had cut only the choicest and most accessible portions. Appellant offered to testify concerning his damage by reason of the failure of appellee to take all the timber under the contract, but the court refused to permit it, and appellant excepted. He also offered to prove

the value of timber which he converted lying on the land when he found it, and its value floating in the river, but the court refused to permit it, and he excepted.

The court, of its own motion, instructed the jury as follows, to which appellant excepted:

"2.   If you find at the time of the conversion of the timber by defendant the plaintiff had forfeited its contract, the plaintiff would be entitled in the action to recover the value of the timber less the amount due defendant under said contract for said timber.

"3.   The court instructs the jury that if they find from the evidence in this case that the plaintiff forfeited its contract, then the defendant would be entitled to retain the $100 put up as a forfeiture under the terms of the contract."

The jury returned a verdict for the plaintiff for $268, and the defendant, upon the overruling of his motion for new trial, appealed.

*Gibson & Park* and *X. J. Pindall,* for appellants.

*F. M. Rogers,* for appellee.

McCULLOCH, J., (after stating the facts.)   The court, in its instructions to the jury, treated the sum of $100 named in the contract and designated a forfeit as liquidated damages for non-performance of the contract by appellee, and limited the damages of appellant to that amount.   The contract provides that "in case the party of the first part shall fail in any part of the agreement as set forth in this contract, they shall forfeit the above $100, which shall at once become the property of the party of the second part, and they shall also forfeit all the rights under this contract, and quit and leave said land, and also leave all timber that has not been run."   Was this a provision for a penalty, or a stipulation for damages?   If the former, it is not enforcible; but if the latter, it is enforcible, and both parties are concluded by it.

This question is one generally somewhat difficult of solution, and there is no fixed rule by which all cases may be governed, as each case is established by its own particular facts.   There are, however, some general rules well established by which a test may be applied.   These are pointed out by Judge Mansfield in *Nilson*

v. *Jonesboro,* 57 Ark. 168, and we refer to the tests therein laid down and the authorities cited in support of them. Usually the surest test of liquidated damages is where the actual damages caused by the breach would be uncertain and difficult of proof, and the sum stipulated appears to be reasonable compensation for the injury occasioned by the failure to perform the contract. The purpose in permitting such stipulation for damages as compensation is to render certain and definite that which appears to be uncertain and not easily susceptible of proof. But the damages so stipulated for must be such as to amount to compensation only, and not so excessive or unreasonable as to amount purely to a penalty, without being confined to the elements of fair compensation. 19 Am. & Eng. Enc. Law, p. 399; *Jaquith* v. *Hudson,* 5 Mich. 123; *Willson* v. *Baltimore,* 83 Md. 203; *Gower* v. *Carter,* 3 Iowa, 244; *Monmouth Park Assn.* v. *Wallis Iron Works,* 55 N. J. L. 132.

The stipulation in the contract under consideration in this case is wholly lacking in the elements of certainty necessary to indicate an agreement for liquidated damages, and its uncertainty stamps it as a stipulation for a penalty. By its terms, the amount to be paid by the obligor in the event of his failure to perform the contract depended upon his ability and disposition to remove from the land the timber cut down before the expiration of the time allowed. If he removed all that he had cut, the other party would get nothing more than the $100 for his damage, though he may have failed in the greater part of his contract, whereas, on the other hand, by reason of some accident or misfortune, he might be unable to remove a large quantity of the timber cut down and hauled to the river, and thereby forfeit it, though he had performed the greater part of his contract. For these reasons, the stipulation was manifestly a penalty. This being true, no forfeiture, either of the timber in the river taken by appellant, or the $100, could be enforced, further than the actual damage sustained. 1 Sutherland on Dam. § 283; *Glasscock* v. *Rosengrant,* 55 Ark. 376; *Watts* v. *Camors,* 115 U. S. 353.

Nor could the stipulation be separated, and a part discarded as a penalty, and the remainder treated as liquidated damages. This being true, the court should have permitted proof as to the

actual damage sustained by the appellant by reason of appellee's failure to perform the contract in refusing or failing to take all the timber on the land if that be proved. The measure of damages in that event would be the difference between the market value of the timber left standing on the land and the contract price at the time of the breach. The court erred in refusing to allow appellant to prove such actual damages, as well as in its instruction to the jury on that question.

The appellant should also have been permitted to testify concerning the difference between the value of the logs converted, when floating in the water and when lodged in the sand, as such testimony tended to establish the value in the condition when converted.

For the errors indicated the cause must be reversed, and remanded for a new trial, and it is so ordered.