## WAIT v. STANTON.

Opinion delivered May 13, 1912.

1. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.— A chancellor's finding which is not against the clear preponderance of the evidence will be sustained on appeal. (Page 13.)

2.  BUILDING CONTRACT—CONSTRUCTION.—Where a builders' contract stipulates that if the contractors be delayed in the prosecution or completion of the work by the act, neglect or default of the owner or architect the time fixed for completion of the work shall be extended for a period equal to the time so lost, but that no such allowance should be made unless a claim therefor is presented in writing to the architect within forty-eight hours after the occurrence of such delay, the obligation to make claim for an extension of time is a condition precedent to the contractors' right thereto. (Page 13.)

3.  DAMAGES—LIQUIDATED DAMAGES—PENALTY.—Where a contract for the erection of a two-story flat at a cost of $21,000 stipulated that the work should be completed on a certain date, and that in the event of failure to do so the contractors should pay the owner $25 per day for each day that the building remained unfinished after that date, the sum agreed should be construed as a penalty, and the owner is entitled to recover the fair rental value of the house during the delay in its completion. (Page 14.)

Appeal from Pulaski Chancery Court; *John E. Martineau*, Chancellor; reversed.

STATEMENT BY THE COURT.

On the 23d day of June, 1909, R. E. Wait, and the firm of Stanton & Collamore contractors and builders entered into an agreement in writing, whereby the contractors should provide all of the material and perform all of the work for the erection of a two-story brick flat building to be situated on the property of Wait on East Sixth Street, between Rock and Sherman, in the city of Little Rock for the consideration of $21,073. Among other provisions of the contract are the following:

Article 6 of the contract: "The contractors shall complete the several portions, and the whole of the work comprehended in this agreement by and at the time or times hereinafter stated, towit: work is to be begun at once and pushed as rapidly as practicable. All work is to be completed on or before November 1, 1909. In the event of the failure of the contractors to complete the work wholly and in all its parts on or before the 1st day of November, 1909, they shall pay the owner twenty-five ($25) dollars per day for each and every day that the building remains unfinished after the date above mentioned."

Article 7 of the contract: "Should the contractors be delayed in the prosecution and completion of the work by

the act, neglect or fault of the owner or the architect, or of any other contractor employed by the owner upon the work, or by any damage caused by fire or other casualty for which the contractors are not responsible, or by the combined action of workmen in no wise caused by or resulting from default or collusion on the part of the contractors, then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all the causes aforesaid, which extended period shall be determined and fixed by the architect; but no such allowance shall be made unless a claim therefor is presented in writing to the architects within forty-eight hours of the occurrence of such delay."

Stanton & Collamore brought suit in the circuit court against R. E. Wait. Their complaint alleges the execution of the contract above referred to, that in the course of construction the said Wait desired certain alterations and extras, whereby he became indebted to them in the further sum of $886.55, making a total indebtedness of $21,959.55; that payments have been made thereon in the sum of $20,071.50, leaving a balance due and unpaid of $1,888.05 for which amount they asked judgment.

The Spuck Iron & Foundry Company instituted a suit in the circuit court against Stanton & Collamore, and alleged that it furnished iron supplies in the sum of $1,692 for use in the erection of said flats, for which they asked judgment.

R. H. Scheid filed a mechanics' lien for sum of $200 for work and material claimed to have been furnished and used in the construction of said building under contract between him and Stanton & Collamore.

R. E. Wait instituted suit in the chancery court against Stanton & Callamore. His complaint alleges that the contractors did not comply with the terms of the contract in certain particulars, especially in failing to complete said building within the time specified in the contract. The complaint also alleges errors in the claims of the contractors for additional work and compensation. By agreement between the parties the cases filed in the circuit court were transferred to the chancery court, and consolidated with the chancery suit.

The evidence for the plaintiff, Wait, tended to show that

the construction of the flats was not completed until January 1, 1910, that the claims of the contractors for changes and alterations in the building were erroneous in many particulars, that the delay in the construction of the building was not due to the fact that these changes and alterations were made, but was wholly due to the fault and neglect of the contractors.

On the other hand, the testimony of the defendants establishes that the alterations and additions to the building were done under the direction of the architect, and that the amounts charged for the extra services performed were reasonable, that the delay in the completion of the building was due to the fact that the architect failed and neglected to furnish the specifications for the iron work which had to be constructed in the building as the work progressed.

In rebuttal, the plaintiff introduced testimony tending to show that the architect promptly furnished all the specifications necessary for the erection of the building within the time specified in the contract. No claim in writing was presented to the architect that the contractors would claim additional time by reason of the changes and alterations made in the plans of the building, or for the delay of the architect in furnishing the specifications.

Other facts will be stated or referred to in the opinion.

The chancellor disallowed items claimed by the contractors for the alterations and extra work amounting to in the aggregate $185, and decreed that the contractors should recover from the plaintiff $1,703.05 with the accrued interest. It was further decreed that the said R. H. Scheid recover out of the sum adjudged to Stanton & Collamore, the sum of $200 in full of his claim. That the Spuck Iron & Foundry Company should have and recover from Stanton & Collamore $1,869 in full of its claim and also have judgment against the said R. E. Wait as garnishee for the sum due by the said Wait under this decree to the said Stanton & Collamore, after deducting the sum decreed to the said R. H. Scheid.

The plaintiff has appealed.

*Morris M. Cohn,* for appellant.

1. This court has sustained liquidated damages for delay in the completion of a building. 56 Ark. 405; 69 *Id.* 114; 73

*Id.* 432; 54 *Id.* 340; 57 *Id.* 168; 14 *Id.* 315. The testimony shows that $25 was very little to compensate for loss of rents occasioned by the delay.

2. The court erred in its findings as to alterations and additions and the cost thereof. It also erred as to interest and in refusing a decree over for $246 and costs against appellee.

*Mehaffy, Reid & Mehaffy,* for appellees.

1. The full amount of the extras should have been allowed. The decided weight of testimony is in appellees' favor. A chancellor's findings will be sustained unless clearly against the preponderance of the evidence. 89 Ark. 309; *Ib.* 132; 73 *Id.* 489; 67 *Id.* 200.

2. The claim for liquidated damages is unreasonable. The words used are not conclusive. The amount grossly exceeds just compensation and rental value. 63 N. W. 459; 115 N. Y. S. 181; 87 N. E. 263; 99 N. Y. S. 996; 78 Atl. 128; 110 Pac. 841; 93 N. E. 81; 86 N. Y. S. 1066.

HART, J., (after stating the facts). The contractors filed a list of the alterations and additions which they made to the building, pursuant to the directions of the architect and their statement of the cost thereof. The chancellor allowed some of these items and disallowed others. We do not deem it necessary to set out in detail the proof taken in regard thereto. It is sufficient to say that the evidence was conflicting, and, after a careful consideration of it, we are of the opinion that the finding of the chancellor is not against the clear preponderance of the evidence, and under the settled rules of this court his finding of fact in regard thereto will be sustained.

2. The contract provides that the building should be completed on or before the 1st day of November, 1909, and that the contractors shall pay the owner $25 per day for each and every day that the building remains unfinished after that date. The evidence shows that the building was not completed until January 1, 1910, and the chancellor disallowed the claim of plaintiff for damages in the sum of $25 per day for the sixty days intervening between the 1st day of November, 1909, and the 1st day of January, 1910.

The chancellor in rendering his decision seems to have

proceeded upon the theory that the ordering of the extra work by the plaintiff and the failure of the architect to furnish the specifications were acts on the part of the owner which operated to change the time limit, but in reaching this conclusion he did not take into consideration all of the provisions of the contract. The contract provided that changes and alterations might be made to the plans of the building by the architect. Article 6 provides that it shall be completed on or before the 1st day of November, 1909. Article 7 provides that, if the contractors be delayed in the prosecution or completion of the work by the act, neglect or default of the owner or architect the time herein fixed for the completion of the work shall be extended for a period equal to the time lost by reason of any such cause. But it also provides that no such allowance shall be made unless a claim therefor is presented in writing to the architect within forty-eight hours after the occurrence of such delay. Thus it will be seen that the contract expressly provides for a notice in writing, and the owner can not be deprived of the benefit of that stipulation in his agreement. The obligation of the contractor to make claim for an extension of time in the manner prescribed by the contract was a condition precedent to his right thereto. *Ward* v. *Haren,* (Mo. App.) 119 S. W. 446; *Curry* v. *Olmstead,* 26 R. I. 462; *J. G. Wagner Co.* v. *Cawker,* 112 Wis. 532; *Feeney* v. *Bardsley,* 66 N. J. Law, 239, 49 Atl. 443; *Kelly* v. *Fejarvery* (Ia.) 78 N. W. 828; *Davis* v. *LaCrosse Hospital Assn.,* 121 Wis. 579; 1 Am. & Eng. Ann. Cases, 950.

In 30 American & English Encyclopedia, (2 ed.), § 1260, the doctrine is stated as follows:

"Where the contract requires that the contractor shall give notice of delay arising from stipulated causes, the contractor must give such notice to entitle him to be excused for the delay."

The evidence shows that the building was not completed until sixty days after the time limit specified in article 6 of the contract. Therefore, the views which we have already expressed makes it necessary for us to determine whether the clause which provided that the contractor should pay the owner $25 per day for each day the building remained un-

finished after the date named for its completion should be construed as a penalty or liquidated damages.

In discussing this subject in the case of *Nilson* v. *Jonesboro*, 57 Ark. 168, the court said:

"The authorities, however, show that where the intention to liquidate the damages is not obvious, the stipulated sum will be given the effect of a penalty if it exceeds the measure of a just compensation and the actual damage sustained is capable of proof. (Citing authorities). But where the contract is of such a nature that the damage caused by its breach would be uncertain and difficult of proof, the sum named by the parties is generally held to be liquidated damages if the form and language of the instrument are not unfavorable to that construction and the magnitude of the sum does not forbid it."

In the case of *Stillwell* v. *Paepcke-Leicht Lbr. Co.*, 73 Ark. 432, the court said:

"Usually, the surest test of liquidated damages is where the actual damages caused by the breach would be uncertain and difficult of proof, and the sum stipulated appears to be reasonable compensation for the injury occasioned by the failure to perform the contract. The purpose for permitting such stipulation for damages as compensation is to render definite and certain that which appears to be uncertain and not easily susceptible of proof. But the damages so stipulated for must be such as to amount to compensation only, and not so excessive or unreasonable as to amount purely to a penalty without being confined to the elements of fair compensation."

In *Streeper* v. *Williams*, 48 Pa. St. 450, Mr. Justice Agnew, speaking for the court, said:

"Upon the whole, the general observation we can make is that in each case we must look at the language of the contract, intention of the parties as gathered from all its provisions, the subject of the contract and its surroundings, the ease and difficulty of measuring the breach in damages, and the sum stipulated, and from the whole gather the view which good conscience and equity ought to take of the case."

Guided by the principles above announced, it will be seen that each case must be decided according to its own pecu-

liar facts. The building in question was a flat or apartment house , consisting of twelve apartments, and was erected for the sole purpose of being rented. The cost of its erection as provided by the terms of the contract was $21,073. The damages sustained by the owner were easy of ascertainment; its rental value could be easily estimated. In view of its intended use and the cost of erecting it and the ease with which the actual damages suffered by the owner could be ascertained, and of the other surrounding facts and circumstances in the case, we are of the opinion that the sum agreed to be paid was out of proportion to the probable or presumable damage, and should therefore be construed as a penalty, and not as liquidated damages.

It will be noted that the sum agreed to be paid was $25 for each day; this would amount to $750 per month; to $1,500 for the sixty days for which it is claimed; or to an annual amount of $9,000. It is evident that this sum would be greatly out of proportion as compared to the rent which would be presumably received or to a fair interest on the amount invested.

For the error indicated, the decree will be reversed; and inasmuch as the chancellor tried the case upon an erroneous theory, in accordance with the ruling in the case of *Long* v. *Chas. T. Abeles & Co.*, 77 Ark. 150, the case will be remanded with directions to the chancellor to grant leave to the parties to take proof upon the fair rental value of the house for the sixty days for which the plaintiff claims damages for delay in the completion of the building.

It is so ordered.