STATEMENT OF FACTS.
The appellants, the board of trustees of the Arkansas Tuberculosis Sanatorium, brought this suit against the Auditor of State for a mandamus to compel him to issue to them a warrant for $6,000, the balance alleged to have been appropriated for the sanatorium under acts Nos. 21 and 351 of the Acts of the General Assembly of 1927, and incidentally to determine what amount, if any, was still due the contractor, George W. Fair, for the construction of the hospital at the Tuberculosis Sanatorium.
The hospital at the sanatorium was destroyed by fire on January 13, 1926, and on January 20, 1926, the Governor, under authority of 2839, C. M. Digest, issued a proclamation authorizing the board to incur an indebtedness of $35,000, with interest at the rate of six per cent. per annum, for the purpose of constructing a new hospital. That the indebtedness was incurred and a contract was entered into with George W. Fair, contractor, for the construction of the hospital building, which has been completed, and is now occupied.
The Legislature by said act 351 appropriated for the use of the board of trustees of the sanatorium the sum of $35,000 principal and $1,050 interest, for paying the indebtedness incurred in the construction of the hospital building, the act containing a provision that the Auditor shall issue no warrants pursuant thereto unless and until there shall have been filed with the said board of trustees receipts showing payment in full of all claims by contractors, laborers, materialmen and others, for material *Page 699 
and labor furnished and used in connection with the erection of said hospital building.
It was alleged that the auditor had issued warrants for all the said appropriation except $6,000, and, not withstanding the board had filed the receipts with him, as required by the act, for all claims of whatever kind incurred in the construction of the hospital building, he had refused to issue a warrant to the board for the $6,000 of said appropriation, withholding the same on account of the pretended claim of George W. Fair, which he claims the board owes him. It was alleged that Fair was the contractor, and claimed there was an unpaid balance due him, under his contract, which was unjust and unfounded, and also that they had paid him all the amount due under the contract, and filed with the Auditor his receipt for the last and final payment, which was certified to by the architect superintending the construction, as the full amount due him; that Fair declined to receive the amount in full payment, however, and unjustly claims the board owes him some amount, and because of the pretended claim the Auditor refused to issue a warrant for the balance of the appropriation.
Fair was made a party defendant, so that he might assert his claim and have the court determine whatever amount, if any, was due him, so that the Auditor be required to issue a warrant for the amount due the board, and, if any amount is found to be due Fair, for such amount as might be due him.
The Auditor answered, admitting the passage of act 351, making the appropriation of the sum of $36,050 for paying the indebtedness incurred by the board in the construction of the hospital building. He set out the provisions of the act requiring receipts showing full payment of all indebtedness for the construction, before warrants should be issued in its payment, and admitted that he had issued warrants to the board for all the appropriation except $6,000, the board having first certified to him that they had paid out $46,124.21 for the construction *Page 700 
of the building, which constituted full payment of everything, labor and materials, used in the building, for which the board was liable. Stated that he knew nothing about the controversy between the board and the contractor, but that, before issuing any warrants to the board, it had entered into a stipulation with Fair consenting that the Auditor should issue warrants in favor of the board for all the appropriation except $6,000, which was sufficient to cover the amount in controversy between the board and contractor. That he was ready and willing to issue warrants against the $6,000 appropriation to the persons entitled thereto after they are determined by the court. He asks that the controversy be determined, and that he be directed to issue warrants on the balance of the appropriation to the persons' entitled thereto.
Fair answered, admitting the allegations of the complaint, except he denied that he had been paid the amount due under the contract and that the board had filed with the Auditor his receipt for the last and final payment, and denied that said payment was certified to by the architect as the just amount due him under the contract. Admitted that he declined to receive it in full payment. Alleged that the Auditor could not lawfully issue a warrant to the board for the $6,000 claimed to be due him, because it had not filed a receipt showing the payment of all claims for the construction of the building. Also alleged that the board of trustees had not filed with the Auditor the receipts required to be filed showing payment in full of all claims for the construction of the hospital, in accordance with 1 of Acts 23 of 1927. Stated that he had made a contract for the erection of the building, the amount that had been paid him thereunder, that he was required to do certain extra work, and that there was a balance due him under the contract of $5,936.42, with interest at 6 per cent. from October 1, 1926. Prayed that the petition of the board be denied, and that they should be ordered and directed to pay the said sum, with interest.
The testimony shows that there were 43 patients in the building before it had been destroyed in January, *Page 701 
and that there were many others on the waiting list, necessitating an increase in the capacity of the hospital. About $14,000 was realized from the insurance, and, with the deficiency appropriation authorized, the board made a contract for the construction of the new building with George W. Fair. This contract was in writing, and specified how the building should be constructed, under the direction and supervision of the architect, whose decision should be final upon any question about the plans and specifications, and no alterations should be made in the work except upon the written order of the architect, which should state the amount to be paid or allowed the contractor by virtue of such change, and required the completion of the building under article 6 of the contract, as follows:
"The contractor shall complete the several portions and the whole of the work comprehended in this agreement by and at the time or times hereinafter stated, to-wit: The contractor agrees to complete the building not later than June 24, 1926. The contractor shall pay to the owner as liquidated damages the sum of $50 per day for every day that the building remains uncompleted after said date for completion. Additional time is only to be allowed for delays beyond the contractor's reasonable control, and approved in writing by the architect; it being distinctly understood by the parties hereto that said sums of money are agreed upon as the amounts due the owner as liquidated damages for the owner's inability to use said building."
Article 7 provides that, if the contractor should be delayed in the prosecution or completion of the work, the time fixed for the completion should be extended an equivalent period by reason of the causes specified therein, the extension to be determined by the architect; but no allowance should be made unless a claim therefor was presented to the architect within 48 hours after the occurrence of such delay.
No claim was made by the contractor in writing for any extension of time on account of delay under the *Page 702 
contract. The contractor claimed he lost a certain amount of time for which he should not be charged as delay, because of having to tear out and rebuild certain stairways after the building was virtually completed, and that he should not be charged with 30 days for the delay caused by inability to procure sand for the construction, on account of the high and overflowing condition of the river from which the sand had to be taken. He also insisted that more of the delay was occasioned by his inability to procure the tiling agreed to be used in the construction, which was a patented article, and could not be supplied by any one else nor furnished any sooner than it was delivered by the person with whom he had made the contract of purchase thereof.
There was some testimony tending to show that the contractor was not proceeding with diligence and that there was unnecessary delay, and, although the board allowed the contractor for a part of the time which he claimed to be for delay in the procuring of the sand, it did so over the certificate of the architect that he was not entitled thereto, and the board refused to allow any part of the contractor's claim for extension for delay for the construction of the stairway and the extra cost thereof, the board contending and the architect deciding that the contractor alone was responsible for not having built the stairway in accordance with the contract, and was not entitled to any of the expense incident to tearing it out and rebuilding it in accordance with the specifications, nor to an extension for any delay of the completion of the building because thereof.
The testimony showed the amount that had been paid the contractor, and the court virtually split the difference on the contention about crediting him and in requiring him to pay the $50 a day claimed to be liquidated damages for only one-half the time which the board contended it should be paid.
(after stating the facts). Appellants insist that, upon a correct construction of the provision of the building contract relative thereto, the amount per day provided and required to be paid and allowed to be charged against the contractor for the time required to construct and finish the improvement beyond the time it was agreed to be finished, should have been charged, and that the court erred in not rendering a judgment for the full amount claimed as liquidated damages by the board for such delay, and this contention must be sustained. The authorities are reviewed and the rule for assessment of liquidated damages again announced in Robbins v. Plant, 174 Ark. 639, 297 S.W. 1027, 31 L.R. 491.
Said article 6 binds the contractor to the completion of the building not later than June 24, 1926, and to the payment to the owner as liquidated damages the sum of $50 per day for each day the building remains uncompleted after said date; that additional time, for delays beyond the contractor's reasonable control, is only to be allowed when approved in writing by the architect, and that it is expressly understood that said sums of money are agreed upon as the amount due the owner as liquidated damages for the owner's inability to use said building.
The damages for the breach of the contract in respect of delay in the completion of the building are in their very nature uncertain and difficult of ascertainment, it being well-nigh impossible to prove any pecuniary loss to the board or the State on account of it, all of which was recognized by both parties thereto, and it was expressly agreed that such amount should be regarded as liquidated damages.
In Rutherford v. Kohler, 174 Ark. 894, 298 S.W. 9; Robbin v. Plant, supra, the court quoted from Wait v. Stanton, 104 Ark. 9, 147 S.W. 446, which had passed upon precisely the same as article 7, already set out herein, and held: "The obligation of the contractor to make claim *Page 704 
for an extension was a condition precedent to his right thereto."
There is no evidence showing that the contractor made any claim to the architect for an extension of time: in accordance with said article 7 of the contract, or otherwise, at any time during the period of the claimed delays, or at all, before the completion of the building. Nor does the proof show nor is it even claimed that the delays were caused by the act, neglect or default of the owner or its architect. Then, too, the architect testified that the contractor was not entitled to an extension of time on account of any of the delays, because they resulted from his own failure to order and arrange for procuring his materials on time, as he was bound under the contract to do.
The architect's decision was binding on the contractor, too, in the absence of fraud or such gross mistake as necessarily implied bad faith on the part of the architect, and none such was even alleged, nor was there any proof conducing to that effect. Boston Store v. Schleuter, 88 Ark. 213, 114 S.W. 242; Carlile v. Corrigan,83 Ark. 136, 103 S.W. 620; Federal Grain Co. v. Hayes Grain Commission Co., 161 Ark. 51, 255 S.W. 307; Hayes Grain Commission Co. v. Federal Grain Co., 169 Ark. 1072,277 S.W. 521; U.S. v. Gleason, 175 U.S. 588,20 S.Ct. 23, 44 L.ed. 284; Ripley v. U.S., 223 U.S. 695,32 S.Ct. 352, 56 L.ed. 614.
The board did allow the contractor for 14 days' extension of time for delay claimed by him to have been caused by frequent rises in the river, preventing his being able to get the sand necessary for the construction, notwithstanding the architect's judgment that he was not entitled to it, but this constituted no waiver of its right to insist upon the stipulated damages for all the rest of the delay in the completion or construction and delivery of the building, as the lower court erroneously held.
The judgment is accordingly reversed, and, the contractor having been fully paid, as well as all other *Page 705 
claims for construction of the building, the cause is remanded with directions to issue a mandamus to compel the Auditor to issue warrants for payment of the balance of the appropriation to the board, in accordance with the law and the prayer of the petition.