DEW *v.* REQUA.

4-9498                                      239 S. W. 2d 603

Opinion delivered May 14, 1951.

Rehearing denied June 11, 1951.

*Wright, Harrison, Lindsey & Upton,* for appellant.

*Carl Langston,* for appellee.

HOLT, J. Appellant, Mrs. Mary Ollie Requa Dew, is one of the three daughters of appellee, Mrs. Nora Requa. The present suit involves title to certain real and personal property.

December 1, 1938, Mrs. Requa's husband, T. P. Requa, (and Ollie's father) died testate. He gave $1.00 to each of his three daughters and all the remainder of his property to Mrs. Requa.

Prior to his death (in December, 1936) T. P. Requa and Mrs. Requa had conveyed by warranty deed for a consideration of $1.00 and other "valuable considerations" Lot 7, Block 1, W. B. Worthen's Addition to the City of Little Rock, to their daughter, Ollie. September 10, 1936, they had also transferred to Ollie 43 shares of Preferred Arkansas Power & Light Company stock, which Ollie later, November 15, 1942, cashed for $4,750. At this time Ollie was married to Frank Bauer but they had separated.

March 9, 1937, Mr. and Mrs. Requa sued Ollie to require her to reconvey Lot 7 and the 43 shares of stock, to them. On June 10, 1937, Chancellor Dodge entered a decree vesting title to the 43 shares of stock, and a life estate in Lot 7 (referred to as the homeplace) in Mr. and Mrs. Requa, with the remainder in Ollie.

At the time of Mr. Requa's death (December 1, 1938) Mrs. Requa was left the following property: Cash of her own, $500; Cash left by Mr. Requa, $500; Cash from Railway local, $500; Dividends from A. P. & L. Stock $760.81; Metropolitan Insurance, $2,000; Railway Con-

ductor—Insurance, $2,000. She also owned the following: A life estate in Lot 7, Block 1, W. B. Worthen's Addition (3724 W. 13th), household furniture, 43 shares of Arkansas Power & Light Stock, also Plots 179, 247, Section 4, Pine Crest Memorial Park (16 graves).

Soon after her father's death, Ollie moved into her mother's home (Lot 7), took charge of her mother's affairs, and placed the above cash items in a lock box in a local bank in their joint names and each was issued a key. Ollie appears to have had no property of her own.

July 27, 1939, Mrs. Requa bought Lot 8, Block 1, W. B. Worthen's Addition to the City of Little Rock (adjoining lot 7) and took title in the name of Ollie. The purchase price was $2,250. This property was rented for $27.50 per month from July, 1939, to October 31, 1941, and the rent money used for living expenses. The homeplace (Lot 7) was converted into a duplex in 1943, rented, and Ollie and her mother moved into the house on Lot 8.

April 13, 1940, administration of the estate of Mr. Requa was finally settled and closed, the 43 shares of stock were transferred to Mrs. Requa, and on the same day, Mrs. Requa transferred this stock to Ollie, and on May 19, 1941, Mrs. Requa transferred the cemetery property (valued at about $500) to Ollie.

Ollie married Ernest Dew in May, 1941, and in June, 1942, she took proper steps to create an estate by the entirety in herself and Ernest in Lot 8, and later on June 25, 1943, a similar estate was created in them in the shares of stock. December 23, 1942, Ollie and Ernest purchased as tenants by the entirety a farm in Ashley County, described as follows: "The west fractional part of section thirty-three (33) in township nineteen (19) south, range five (5) west, containing 70 acres more or less, and more particularly described as follows: All the land west of ditch, north of ditch, leading from Cypress brake into Bayou Bartholomew, and known as the old Lou Eckels Ditch. All an undivided half interest in a woven wire fence that is situated on the east side of

the 70 acres of land that divides the land as a line fence.''
This farm appears to have been purchased with Mrs.
Requa's money.

The present suit was filed by Mrs. Requa September
13, 1949, in which she asked that Lot 8, above, be recon-
veyed to her by appellants, title thereto vested in her,
and that they account for all rents thereon, and also for
all rents on the ''homeplace,'' Lot 7, Block 1, that they
be required to reconvey to her title to the cemetery prop-
erty and title to the above farm property in Ashley
County, along with the crop proceeds.

The case was tried March 8th and 9th, 1950, but a
final decree was not rendered until July 31, 1950. The
record reflects that on April 27, 1950, Mrs. Requa, after
having been away from appellants since she filed the
present suit (September 13, 1949) returned to them, and
on April 28th, the day following her return, she informed
her attorney and the trial court that she desired to dis-
miss her suit against appellants. In the afternoon of
the same day, Mrs. Requa's attorney at the instance of
Mrs. Beck, another daughter of Mrs. Requa, filed her
(Mrs. Beck's) petition in the Pulaski Probate Court,
seeking the appointment of a guardian for Mrs. Requa.
This petition was presented to the same judge who tried
the present suit. Hearings were had on the petition for
guardian May 5th and 16th, a guardian was appointed
for Mrs. Requa, and this guardian was joined as a party
plaintiff with Mrs. Requa. Mrs. Requa's request that
her suit be dismissed was denied and the court, on July
31, 1950, entered a decree vesting fee simple title to
Lot 8 and the cemetery property, above, in Mrs. Requa
and Lot 7 in Mary Ollie Requa (now Dew), subject to
the life estate of Mrs. Requa. There was also a decree
in favor of Mrs. Requa for certain rents and properties
and the proceeds from the sale of the 43 shares of stock
and dividends therefrom.

The case comes here for trial *de novo*.

After a review of the somewhat extended record,
we have concluded that the trial court erred in denying

Mrs. Requa's request that her suit against appellants be dismissed and in appointing a guardian for her for the reason that the preponderance of the testimony is against the court's finding that Mrs. Requa was incompetent, incapable of handling her own affairs, or in need of a guardian. While the testimony as to Mrs. Requa's competency to handle her own affairs (which we think it unnecessary to detail) was somewhat conflicting, we hold, as indicated, that she was sane for all purposes of this litigation. Her own testimony, in which she answered questions clearly and intelligently, given in open court, (although she was about 79 years old) impresses us that she was competent and capable of handling her own business within the meaning of the test many times announced by this court, in such circumstances.

In *Pulaski County* v. *Hill,* 97 Ark. 450, 134 S. W. 973, one of our leading cases on the test of competency, we said: "But the question in all such cases where incapacity arising from defect of the mind is alleged is, not whether the mind is itself diseased or the person is afflicted with any particular form of insanity, but rather whether the powers of the mind have become so affected, by whatever cause, as to render him incapable of transacting business like the one in question. As a general rule, it may be stated that, in order to have that measure of capacity required by law to be of sound mind, a person must have capacity enough to comprehend and understand the nature and effect of the business he is doing; and where it is clearly made to appear that the mental incapacity and imbecility is of such a degree as to render the person unable to conduct the ordinary affairs of life and leaves him in a condition to be the victim of his infirmity, then such person is in contemplation of law not of sound mind. Weakness of understanding is not alone sufficient to show mental unsoundness if capacity remains to see things in their true relations and where the individual has a moderate comprehension of his immediate duties and of the value and use of his property." Reaffirmed in many subsequent decisions, among the latest being that of *Kelley* v. *Davis,* 216 Ark. 828, 227 S. W. 2d 637.

Even if the probate's adjudication that Mrs. Requa was incompetent was legal,—a matter which we need not decide—that adjudication is *prima facie* only and does not preclude us from inquiry in the case at bar. "No conclusive presumption can be given to judgment of probate court adjudging person insane, and such judgment is but *prima facie* evidence of insanity." *Mason* v. *Graves et al.*, 167 Ark. 678, 265 S. W. 667, (Headnote 1), (not reported in the Arkansas reports.)

Mrs. Requa should therefore have been allowed to dismiss her suit, as above indicated. She had absolute control over her own litigation. "It is settled law that an attorney cannot compel his client to continue litigation, and that the client may dismiss or settle the cause of action without consulting his attorney." *Purvis* v. *Walls,* 184 Ark. 887, 44 S. W. 2d 353.

Mrs. Requa testified that she was devoted to her daughter, Mary Ollie, that Ollie loved her, and that Mr. Dew, Ollie's husband, was kind and good to her, and that she wanted to live with them the remainder of her life.

Mary Ollie freely and frankly admitted and conceded that she was morally obligated to care for and support her mother for the remainder of her life and wanted to do so.

Ernest Dew admitted that Mrs. Requa should look to Ollie and him for care and support.

The gift of the Arkansas Power & Light Stock (or its proceeds) by Mrs. Requa to her daughter, Ollie, was intertwined with and grew out of the other conveyances by Mrs. Requa to Ollie and is supported by the same consideration: that is, Ollie's obligation properly to care for, support and provide for Mrs. Requa during her entire life and then to provide suitable burial.

The Ashley County farm was purchased with the proceeds of the Arkansas Power & Light Stock, so that farm, as well as all the other property, should be and is impressed with the trust, (*Bowen* v. *Frank,* 179 Ark. 1004, 18 S. W. 2d 1037),—acknowledged by Mrs. Dew

in her testimony—that Mr. and Mrs. Dew are to properly care for, support and provide for Mrs. Requa during her life and then to provide suitable burial.

Accordingly, the decree is reversed and the cause remanded with directions to enter a decree, not inconsistent with this opinion.