Thane G. ALLEY, Guardian of the
Person and Estate of Cyrus
JOHNSON v. Raboo RODGERS and
Henry MORGAN

80-71                                                    599 S.W. 2d 739
Supreme Court of Arkansas
Opinion delivered June 16, 1980

*Arnold & Demott*, by: *Steve Demott*, for appellant.

*Janice O. Williams*, for appellees.

Frank Holt, Justice. Cyrus Johnson, now deceased, agreed to purchase three mobile homes from appellees. The contract provided that the purchase price of $9,500 would be paid as follows:

> Two Thousand Dollars ($2,000.00) down payment, and balance of Seven Thousand Five Hundred Dollars ($7,500.00), due within 60 days of the execution of this contract; . . .

> [Cyrus Johnson] agrees that down payment is to be considered as earnest money and liquidated damages should [Cyrus Johnson] not complete the terms of the contract;

A few days after the contract was executed, Johnson advised the appellees that he would be unable to complete the purchase. Subsequently his $2,000 check was returned because of insufficient funds. Thereupon the appellees filed this action for $2,000 liquidated damages as provided in the

contract. The appellant, who was appointed guardian of the person and estate of Johnson about ten days after the contract was executed, filed an answer denying the allegations and pled the affirmative defense that Johnson was incompetent at the time of execution. The court, sitting as a jury, found for the appellees and awarded them $2,000 plus interest and costs. Hence this appeal.

The appellant first asserts that the trial court erred in holding the liquidated damages clause valid. Appellant insists it constitutes a penalty and is, therefore, invalid. It is well settled that a contract will be construed as properly stipulating for liquidated damages where, from a prospective view of the contract, it appears (1) that the parties contemplated that damages would flow from a failure to perform the contract; (2) that such damages would be indeterminate or difficult to ascertain; and (3) that the sum bears some reasonable proportion to the damages which the parties contemplated might flow from a failure to perform the contract. *Montague* v. *Robinson*, 122 Ark. 163, 182 S.W. 558 (1916); *Wait* v. *Stanton & Collamore*, 104 Ark. 9, 147 S.W. 446 (1908); and *Stilwell* v. *Paepcke-Leicht Lumber Co.*, 73 Ark. 432, 84 S.W. 483 (1905). In determining the proper interpretation of a provision for damages, we must "place ourselves in the position of the contracting parties and view the subject matter of their contract prospectively and not retrospectively." *Montague* v. *Robinson*, supra. "This question is one generally somewhat difficult of solution, and there is no fixed rule by which all cases may be governed, as each case is established by its own particular facts." *Stillwell* v. *Paepcke-Leicht Lumber Co.*, supra.

Inasmuch as this case was tried before the court, sitting as a jury, after July 1, 1979, we will not set aside the court's findings of fact unless they are clearly erroneous. Ark. Rules of Civ. Proc., Rule 52, and *Taylor* v. *Richardson*, 266 Ark. 447, 585 S.W. 2d 934 (1979). Although here the parties recognized that damages would flow from a breach of the contract, the appellant argues that the stipulated amount of the liquidated damages is unreasonable and constitutes a penalty. It appears that the amount of prospective damages would have been difficult to ascertain and is not unreasonably disproportionate to potential damages for breach of the contract. At the

time the contract was executed, two of the three trailers were each rented for $140 per month. After Johnson agreed to the purchase, the renters, pursuant to notice, vacated the trailers. Advertisements were discontinued and prospective buyers told that the trailers were sold. It is true that the trailers were vacant only two or three weeks until a local person purchased them for $7,500. Even so, at the time of their contract, the parties could not estimate without some difficulty the potential loss of rental income. The trailers could possibly have remained vacant for several months, resulting in a considerable loss of rental income to the appellees. At a combined rental income of $280 per month, seven months' vacancy would have resulted in an approximate loss of $2,000. Further, the fact that appellees were attempting to sell all of the trailers at the same time could very well reduce the number of potential buyers. In our view the court's finding that the liquidated damages clause was valid is not clearly erroneous.

The appellant next contends the trial judge erred in not ruling that Johnson was incompetent to enter into the contract for the sale of the three trailers. Ten days after the contract was executed, the probate court appointed appellant guardian of the person and estate of Johnson. A probate court adjudication that one is incompetent is only prima facie evidence of insanity. See *Dew* v. *Requa*, 218 Ark. 911, 239 S.W. 2d 603 (1941). Here, other than this adjudication, the only evidence adduced by appellant as to Johnson's mental incapacity on the date of the contract was a local physician's testimony. This physician had submitted only a one sentence report in the probate court proceeding; i.e., he did not feel Johnson was capable of handling his own personal affairs. After admitting that he had primarily treated Johnson for physical ailments and had never given him any psychological or mental tests, he felt Johnson was in a state of mental confusion and disoriented most of the time. He admitted, however, that he had not seen Johnson for approximately a month before Johnson signed the contract. He had never advised that he be placed in a nursing home, and he could not say whether Johnson was disoriented, confused or incompetent on the date of the contract. The appellees testified that each of them had several conversations with Johnson concerning

the sale of the trailers. After inspecting the trailers, Johnson read the contract in the presence of a business partner, asking several pertinent and reasonable questions before signing it. He remarked he was familiar with the terms of this contract since had had experience with "several deals like this." He planned to move the trailers to a nearby lake and rent them.

We hold this evidence does not demonstrate that the trial court was clearly in error in not finding Johnson's mental condition rendered him incapable of transacting the business in question; i.e., executing a contract.

Affirmed.